**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 10 2013, 5:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. HARDTKE**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID ROY WINTERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1302-CR-41 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jenny Pitts Manier, Judge
Cause No. 71D01-1206-CM-3267

**October 10, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

David Winters appeals his conviction and sentence for Class A misdemeanor conversion. We affirm.

**Issues**

Winters raises three issues, which we restate as:

I.     whether he knowingly and intelligently waived his right to counsel;

II.     whether there is sufficient evidence to support his conviction; and

III.     whether he was properly sentenced.

**Facts**

On June 4, 2012, Winters was shopping at a Kroger in Mishawaka. From a catwalk at the back of the store, Kroger loss prevention officer Swan Mishler saw Winters remove a box of Osteo Bi-Flex from a shelf and go to another section of the store, where he removed the bottle of Osteo Bi-Flex from the box and put it into his pants. Winters folded the box and put it into his pocket. Winters then selected other items and paid for them. Winters did not pay for the Osteo Bi-Flex. When Winters left the store, he was apprehended by Mishler. While walking to the manager's office with Mishler, Winters removed the bottle of Osteo Bi-Flex from his pants and told Mishler that he brought it into the store with him. Mishler called the police and, after they arrived, Winters was arrested. During a pat down search, the folded box was recovered from Winters's pocket.

2

The State charged Winters with Class A misdemeanor conversion. At a July 5, 2012 hearing, Winters indicated that he would be representing himself. Winters presented the trial court with a written waiver of his rights. Although Winters did not fill out the line describing his education, he informed the trial court that he had a GED. At that hearing, the trial court informed Winters that he could have a private attorney or a public defender. When the trial court asked if he had studied the rules of evidence and trial procedure, Winters indicated that he had.

At an October 12, 2012 hearing, a more thorough inquiry into Winters's decision to represent himself was conducted. Winters indicated that he would be representing himself without any formal training, and the trial court informed him that he would be held to the same standard as a professionally trained lawyer. When Winters stated he had a GED, the trial court informed him that a lawyer would have completed college, had three years of legal education, and passed the bar exam. The trial court stated that the rules of law and procedure are complicated matters and reiterated that people representing themselves are held to the same standard as lawyers.

The trial court informed Winters that he had been charged with a Class A misdemeanor, which was punishable by up to one year in prison, and that he would be responsible for defending himself while risking a severe limitation on his liberty. The trial court advised Winters to seek the assistance of counsel and informed him that, if he could not afford a lawyer, the state would provide one at no cost. Then the trial court twice indicated that Winters should not proceed without the advice of an attorney. The trial court advised Winters that, if he was found guilty, he could not change his mind and

3

say he wants a lawyer. The trial court confirmed that Winters was not under the influence of alcohol, drugs, or medication that would impair his ability to understand what they were talking about.

When the trial court confirmed that Winters did not have a formal legal education, it explained there was a difference between the Indiana Code and the Indiana Trial Rules. The trial court also explained that knowledge of the Indiana Rules of Evidence "is quintessentially important to understanding what you can and cannot present at trial in terms of witness testimony and documentary evidence." Tr. p. 23. The trial court further explained that, if Winters was not skilled in those rules, he was at risk of being unable to make informed objections to the State's evidence. The trial court expressed concerns about Winters's ability to represent himself. The trial court explained its duty to see that the State and the defendant have a level playing field and that, if Winters did not have a lawyer, the playing field would tilt in favor of the State. The trial court explained that it was Winters's choice to proceed without an attorney, and Winters repeatedly indicated he understood the trial court's advisements.

At a November 15, 2012 hearing, the trial court advised Winters of his responsibilities during trial and reminded him that he would be held to the same standard as an attorney. The trial court also reminded Winters that it was not in his best interest to proceed without the assistance of counsel. When the trial court confirmed that Winters declined to seek the assistance of counsel or to ask for counsel to be appointed, Winters replied, "I feel I have no other choice but to put my life in my own hands. I have bad experiences with attorneys, trust issues." Id. at 27.

4

On November 29, 2012, a jury trial was conducted, and Winters was found guilty as charged. The trial court sentenced Winters to 360 days, with 330 days suspended, and six months of probation following his release from jail. Winters now appeals.

**Analysis**

*I. Right to Counsel*

Winters argues that his conviction must be reversed because he did not knowingly and intelligently waive his right to counsel.

> The Sixth Amendment to the U.S. Constitution and Article 1, section 13 of the Indiana Constitution guarantee a criminal defendant the right to appointed counsel. Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975); Callahan v. State, 719 N.E.2d 430, 439 (Ind. Ct. App. 1999). Accordingly, when a criminal defendant waives his right to counsel and elects to proceed pro se, we must decide whether the trial court properly determined that the defendant's waiver was knowing, intelligent, and voluntary. Greer v. State, 690 N.E.2d 1214, 1216 (Ind. Ct. App. 1998), trans. denied. Waiver of assistance of counsel may be established based upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Jackson v. State, 441 N.E.2d 29, 32 (Ind. Ct. App. 1982.)[.]

Jones v. State, 783 N.E.2d 1132, 1138 (Ind. 2003) (footnote omitted). Our supreme court has endorsed four guidelines for a trial court to give a defendant when he or she considers self-representation. Id. They are:

> (1) The defendant should know the nature of the charges against him, the possibility that there may be lesser included offenses, and the possibility of the defenses and mitigating circumstances; (2) the defendant should be aware that self representation is almost always unwise, that he may conduct a defense which is to his own detriment, that he will receive no special treatment from the court and will have to abide by the

5

same standards as an attorney, and that the State will be represented by experienced legal counsel; (3) the defendant should be instructed that an attorney has skills and expertise in preparing for and presenting a proper defense; and (4) the trial court should inquire into the defendant's educational background, familiarity with legal procedures and rules of evidence and mental capacity.

Id. The guidelines are not a rigid mandate setting specific inquiries for a trial court to make before determining whether a defendant's waiver of the right counsel is knowing, intelligent, and voluntary. Id. Instead, it is sufficient for a trial court acquaint the defendant with the advantages to attorney representation and the drawbacks of self-representation. Id.

Here, the trial court inquired about Winters's education, informed him of the legal education lawyers receive, and repeatedly explained that he would be held to same standard as an attorney. The trial court questioned Winters about his understanding of the criminal code, the Trial Rules, and the Rules of Evidence and told him that he was at risk of not being able to make appropriate objections to the State's evidence during trial. The trial court also explained that Winters would be disadvantaged against the State if he proceeded without an attorney. The trial court explained the possible penalty Winters faced and that, if he could not afford an attorney, one would be appointed. Moreover, the trial court repeatedly and unequivocally advised Winters to seek the assistance of counsel. Winters repeatedly indicated that he understood the trial court's concerns and did not waver in his decision to proceed pro se. As in Jones, the record shows that Winters knowingly and intelligently waived his right to counsel.

6

As for Winters's assertion that he should have been appointed standby counsel, he cites no authority for the proposition that every defendant who knowingly, intelligently, and voluntarily waives his or her right to counsel must be appointed standby counsel sua sponte. Without more, we are not persuaded by this argument.

## *II. Sufficiency*

Winters argues there is insufficient evidence to support his conviction. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. Bailey v. State, 979 N.E.2d 133, 135 (Ind. 2012). We view the evidence—even if conflicting—and all reasonable inferences drawn from it in a light most favorable to the conviction and affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . . ." Ind. Code § 35-43-4-3(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b).

Winters asserts that Mishler would not have been able to see the Osteo Bi-Flex from his location in the store and that the State failed to establish that Mishler checked the shelves prior to Winters's arrival to determine if the product was missing. Winters is asking us to reweigh the evidence, which we cannot do.

Mishler testified that he saw Winters select a bottle of Osteo Bi-Flex, walk to another part of the store, remove the bottle from the box, put it in his pants, and put the

box in his pocket. Mishler testified that Winters selected other items, paid for them, and left the store. Mishler stated that he could see everything Winters did from his location in the store. He also testified that after the incident he took pictures of the shelf of Osteo Bi-Flex, which indicated a box was missing. These pictures were shown to the jury.[1]

When questioned about the visibility from the catwalk, Mishler stated that he could see all of the store from that location. The jury was also informed of the distance from the catwalk to the front of the store and was free to assess the credibility of Mishler's testimony. The jury was also free to disregard Winters's claim that he brought the bottle into the store with him, especially in light of the fact that the folded box was later retrieved from his pocket. There is sufficient evidence to support Winters's conviction.

### III. Sentence

Winters argues that his 360-day sentence is inappropriate.[2] Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. Although Rule 7(B) does not require us to

---

[1] Although video footage from security cameras was admitted into evidence and shown to the jury, this exhibit was not included in the record on appeal. Nevertheless, we are able to address the sufficiency of the evidence without reviewing this evidence.

[2] Inappropriate sentence and abuse of discretion claims are to be analyzed separately. King v. State, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). To the extent Winters argues that the trial court abused its discretion by not considering his mental health status as a mitigator, generally a "trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing." Anglemyer v. State, 868 N.E.2d 482, 492 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). Because Winters did not raise the issue of his mental health as a mitigator at the sentencing hearing, the trial court did not abuse its discretion by failing to consider it as a mitigator.

be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Winters argues that, in light of his mental health status, physical maladies, and good behavior after his release from prison in March 2011, we should eliminate his term of probation. Based on the nature of the offense and the character of the offender, we are not persuaded that the 360-day sentence, with 330 days suspended, and six months of probation following his release from jail is inappropriate.

9

Although there was nothing particularly egregious about the commission of the offense, Winters has been involved with the criminal justice system since 1967. His adult criminal history includes convictions for shoplifting, malicious trespass, and three counts of felony kidnapping for which he received a thirty-five year sentence. Winters also has convictions for three counts of felony assault with a deadly weapon, first degree robbery, and felony use of a firearm during a robbery and, at the time of the current offense, he was on parole. Given Winters's criminal history, we are not persuaded that his mental health status, which includes treatment for depression and anxiety, and poor physical health, warrants a reduction of his sentence.

## Conclusion

The record shows that Winters knowingly and intelligently waived his right to counsel. There is sufficient evidence to support his conversion conviction, and his sentence is not inappropriate. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.