Michael **RUTHERFORD**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A04–0608–CR–462.

Court of Appeals of Indiana.

May 25, 2007.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Michael Rutherford appeals his convictions and six-year sentence for one count of Class C felony attempted battery with a deadly weapon and one count of Class D felony criminal recklessness. We affirm in part, reverse in part, and remand.

### Issues

The issues before us are:

I. whether there is sufficient evidence to support Rutherford's convictions;

II. whether double jeopardy concerns preclude him from being convicted of both attempted battery and criminal recklessness; and

III. whether his sentence is appropriate.

### Facts

On September 21, 2005, Annie Dancy drove her niece, Claudette Sanders–Brown, to her apartment in the Colonial Square complex in Indianapolis so she could pick up some items and spend the night with Dancy. Accompanying Dancy and Sanders–Brown were Dancy's two daughters, Bianca and Briana, her infant granddaughter, and her ex-husband, Michael Wilson, Sr. Dancy's son, Michael Wilson, Jr., was accused of having recently murdered Demetrius Nance, who had several friends who either lived or gathered at

the Colonial Square apartment complex. When Dancy arrived at the complex, several persons were congregated outside on the steps of Sanders–Brown's apartment and the one next door.

Bianca, Briana, and Sanders–Brown collected some items from Sanders–Brown's apartment and put them in the car. Bianca and Briana got back into the car, and Bianca told Dancy to start the car because she was feeling nervous about being in the complex. Sanders–Brown had to return to her apartment for one more thing, however. Before she did so, Javon Cushenberry walked in front of Dancy's vehicle and after doing so said, "you better ride the f* * * out right now." Tr. p. 70. Soon thereafter, Cushenberry drew a handgun and fired a shot at Dancy's vehicle. Sanders–Brown then ran or crawled up the steps to her apartment while Dancy attempted to drive away quickly. While running or crawling up the steps, Sanders–Brown saw two other individuals to her left firing shots at Dancy's vehicle as it fled the apartment complex. She identified these men as Rutherford and Jovan Stewart. Dancy's vehicle was struck by at least three bullets. One shot shattered the rear passenger window, which caused cuts to Briana. Another shot lodged in the back of the passenger seat directly behind the infant's car seat. A third penetrated the vehicle above the right rear tire. There is conflicting evidence as to how many shots in total were fired at the vehicle.

The State charged Rutherford, along with Cushenberry and Stewart, with one count of Class A felony attempted murder, two counts of Class D felony criminal recklessness, and one count of Class D felony intimidation. The trial court conducted a bench trial on July 11, 2006. At the conclusion of the State's evidence, the trial court granted Rutherford's motion for judgment on the evidence with respect to the intimidation charge and one of the criminal recklessness charges. The trial court also ruled that Rutherford could not be convicted of attempted murder, but that it would proceed on that charge of the information as a lesser-included offense of Class C felony attempted battery. After the defense rested, the trial court found Rutherford guilty of Class C felony attempted battery and Class D felony criminal recklessness. It also entered judgments of conviction for both counts. It sentenced Rutherford to six years for the attempted battery conviction, with two years suspended and two years of probation; it also sentenced Rutherford to 547 days for the criminal recklessness conviction, to be served consecutive to the six-year Class C felony sentence.[1] Rutherford now appeals.[2]

## Analysis

### I. Sufficiency of the Evidence

Rutherford first claims there is insufficient evidence that he was one of the individuals who fired a shot or shots at Dancy's vehicle. When considering a

---

1. At the conclusion of the sentencing hearing, the trial court stated that the criminal recklessness sentence was to be served concurrent with the attempted battery sentence. However, both the abstract of judgment and chronological case summary state that the sentences are to be served consecutively. Because we reverse the criminal recklessness conviction, this discrepancy is moot. Additionally, the abstract of judgment reflects that Rutherford was convicted of Class A felony attempted murder, not Class C felony attempted battery. On remand, the trial court should prepare a new abstract of judgment correcting this error, as well as deleting the criminal recklessness conviction.

2. We also decide Stewart's appeal today. Cushenberry's appeal arising from this case is still pending.

claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Trimble v. State*, 848 N.E.2d 278, 279 (Ind.2006). If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

▪▪ Rutherford specifically claims that the testimony of Sanders–Brown, who was the only witness to identify him as a shooter, was unreliable. A single eyewitness's testimony is sufficient to sustain a conviction. *Badelle v. State*, 754 N.E.2d 510, 543 (Ind.Ct.App.2001), *trans. denied.* Any inconsistencies in identification testimony go only to the weight of that testimony, as it is the task of the fact-finder to weigh the evidence and determine the credibility of the witnesses. *Id.* We do not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Id.*

▪▪ Sanders–Brown testified that she knew Rutherford personally because she had gone to high school with him. On the day after the shooting, she picked Rutherford out of a police photo lineup as being one of the shooters; Rutherford does not contend that the lineup was unduly suggestive or performed improperly. At trial, Sanders–Brown stood by her identification of Rutherford as being one of the shooters. She also stated that although it was evening and getting dark outside, a nearby streetlight allowed her to see him and that she had no doubt that he was one of the shooters. Rutherford suggests that Sanders–Brown would not have been able to see who was shooting because of the lighting conditions and the chaos of her running up the stairs trying to seek safety. However, the fact-finder, in this case the trial court, had the exclusive responsibility to decide whether to believe Sanders–Brown's identification testimony, after observing her first-hand and considering reasons to believe or not believe her. We will not interfere with the trial court's decision to believe her. There is sufficient evidence to support Rutherford's convictions.

## II. Double Jeopardy

▪▪ Next, Rutherford contends that his convictions for both attempted battery and criminal recklessness violate the Indiana Constitution's Double Jeopardy Clause. That Clause, found in Article 1, Section 14 of the Indiana Constitution, "was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999). Two or more offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Id.* Under the "actual evidence" test, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002). To determine what facts were used, we consider the evidence, charging information, final jury instructions (if there was a jury), and arguments of counsel. *Goldsberry v. State*, 821 N.E.2d 447, 459 (Ind. Ct.App.2005).

To convict Rutherford of Class C felony attempted battery with a deadly weapon, the State was required to prove that he (1) engaged in the commission of a substantial step toward (2) knowingly or intentionally (3) touching another person (4) in a rude, insolent or angry manner (5) by means of a deadly weapon. *See Matthews v. State*, 476 N.E.2d 847, 849 (Ind. 1985) (citing Ind.Code §§ 35–42–2–1 and 35–41–5–1). The requisite culpability for attempted battery with a deadly weapon exists if the defendant's conscious objective is to shoot another person, or where the defendant is at least aware of a high probability that, by his or her conduct of shooting, one of the bullets would strike another person. *Id.* at 849–50. By comparison, to convict Rutherford of Class D felony criminal recklessness as charged here, the State was required to prove that he recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person while armed with a deadly weapon. I.C. § 35–42–2–2(b)(1) and (c)(2)(A). Although the elements of these offenses are not identical, there clearly is substantial overlap between them.

This overlap is continued in the wording of the charging information the State filed. The original attempted murder charge against Rutherford alleged that he knowingly shot a deadly weapon into a vehicle occupied by Dancy, her granddaughter, Michael Wilson, Sr., Briana, and Bianca, with intent to kill them. The criminal recklessness charge alleged that Rutherford while armed with a deadly weapon recklessly performed an act that created a substantial risk of bodily injury to Dancy, her granddaughter, Michael Wilson, Sr., Briana, and Bianca, and specified that the act was firing into the occupied vehicle. Clearly, Rutherford's act of firing into Dancy's vehicle was what the State intended to rely on to support both the attempted murder/battery charge and the criminal recklessness charge.

On appeal, the State posits that there was separate evidence supporting the two charges: namely, that the attempted battery occurred when Dancy was backing out of a parking space and Rutherford shot at the vehicle, and the criminal recklessness occurred when Dancy was driving away and Rutherford allegedly was still shooting at the vehicle. During opening and closing arguments at trial, however, the State made no such hair-splitting attempt to differentiate evidence supporting the attempted murder/battery charge from evidence supporting the criminal recklessness charge. In addition, the record is unclear as to whether Rutherford fired one or more than one shot towards Dancy's vehicle. The testimony of Sanders–Brown, again the only eyewitness to identify Rutherford as a shooter, was not specific as to the number of shots she saw Rutherford fire. Given the language of the charging information, the evidence presented at trial, and the arguments of counsel at trial, we have little hesitation in concluding that there is a reasonable possibility the trial court utilized the same evidence to establish all of the elements of both attempted battery and criminal recklessness and to convict Rutherford of both crimes, in violation of the Indiana Double Jeopardy Clause.

The trial court here entered judgments of conviction for both attempted battery and criminal recklessness and sentenced Rutherford on both counts. It did not simply "merge" the guilty findings for both counts without entering a judgment on the criminal recklessness count. Thus, it is necessary to remand with directions to vacate Rutherford's judgment of conviction for Class D felony criminal recklessness in order to remedy this double jeopardy violation. *Cf. Green v. State*, 856 N.E.2d 703,

704 (Ind.2006) ("a merged offense for which a defendant is found guilty, *but on which there is neither a judgment nor a sentence,* is 'unproblematic' as far as double jeopardy is concerned.") (emphasis added).

### III. Sentence

Rutherford's final claim is that his six-year sentence is inappropriate. This sentence is two years more than the advisory sentence for a Class C felony. *See* I.C. § 35–50–2–6(a).[3] Under Indiana Appellate Rule 7(B), this court may revise a sentence that we conclude is inappropriate in light of the nature of the offense and the character of the offender, after giving due consideration to the trial court's decision.

■■■ At the outset, we urge the State to discontinue citing earlier cases from this court stating that our review of sentences under Rule 7(B) is "very deferential" to the trial court and that we exercise our authority to revise sentences "with great restraint." *See, e.g., Martin v. State,* 784 N.E.2d 997, 1013 (Ind.Ct.App.2003); *Foster v. State,* 795 N.E.2d 1078, 1092 (Ind.Ct. App.2003), *trans. denied.* In our view, the Indiana Supreme Court has set a different course for us to follow when reviewing sentences, one that does not involve *"great restraint"* or being *"very* deferential" to the trial court. *See Hope v. State,* 834 N.E.2d 713, 720 (Ind.Ct.App.2005) (noting that between January 2003 and September 2005, our supreme court issued thirteen opinions analyzing sentences under Rule 7(B) and reduced the sentence in seven of those cases); *see also Neale v. State,* 826 N.E.2d 635, 639 (Ind.2005) (emphasizing

that rewording of Rule 7(B) to allow revision of "inappropriate" as opposed to "manifestly unreasonable" sentences "changed its thrust from a prohibition on revising sentences unless certain narrow conditions were met to an authorization to revise sentences when certain broad conditions are satisfied").

■■■ Since we decided *Hope,* our supreme court has continued to reduce sentences under Rule 7(B); by our count it has now decided a total of twenty-two cases under the "inappropriate" standard in place since January 2003 and revised the sentence in eleven of those cases. We disavow cases such as *Martin* and *Foster* to the extent they suggest excessive deference to the trial court under Rule 7(B), which clearly conflicts with the current, more vigorous approach to revising sentences that a majority of our supreme court has adopted. That said, we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give "due consideration" to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

■■■■ Keeping this in mind, we cannot say that Rutherford's six-year sentence is inappropriate. Regarding the nature of this offense, Rutherford claims there was "nothing particularly egregious" about his conduct above and beyond what generally is necessary to establish Class C

---

**3.** Rutherford committed this crime after the legislature replaced "presumptive" sentences with "advisory" sentences. Rutherford's sole argument on appeal is that his sentence is inappropriate, not that the trial court abused its discretion in sentencing him or in identifying and weighing aggravating and mitigating

circumstances. We have read and acknowledge the sentencing statement the trial court issued. That statement is important and informs our overall 7(B) review. We always look to a sentencing statement because the aggravators and mitigators discussed assist the comprehensive 7(B) review we undertake.

felony attempted battery. Appellant's Br. p. 10. We disagree. Rutherford's callous conduct threatened grave harm not just to one person, but all five persons in Dancy's vehicle, including an infant. The existence of multiple victims of a crime is an appropriate justification for increasing the sentence for that crime. *See French v. State,* 839 N.E.2d 196, 197 (Ind.Ct.App.2005), *trans. denied.*

Regarding Rutherford's character, the record reveals that he was twenty years old at the time of this offense. He had two delinquency adjudications as a juvenile, one for Class B misdemeanor false reporting and one for Class A misdemeanor battery. He was on probation for the false reporting adjudication when he committed the battery, which resulted in a violation of probation finding. The presentence report also reveals the existence of three arrests of Rutherford that either did not result in criminal charges or were dismissed.

 The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *See Bryant v. State,* 841 N.E.2d 1154, 1156–57 (Ind.2006). A defendant's age also is highly relevant in determining the weight to be given to a defendant's criminal history or lack thereof. *See Cloum v. State,* 779 N.E.2d 84, 91 (Ind.Ct. App.2002). Additionally, although a record of arrests by itself is not evidence of a defendant's criminal history, it is appropriate to consider such a record as a poor reflection on the defendant's character, because it may reveal that he or she has not been deterred even after having been subjected to the police authority of the State. *See Cotto v. State,* 829 N.E.2d 520, 526 (Ind.2005).

It is true that the present case represents Rutherford's first felony conviction, and first finding that he committed any crime since becoming an adult. However, we will not ignore the fact that before committing this crime and before reaching the age of twenty-one, Rutherford was found to have committed two other crimes, including another battery, and had been arrested on suspicion of committing several other crimes. Despite this frequent contact with the criminal justice system and the police power of the State, he was not deterred from committing the present offense. Therefore, although Rutherford's criminal history is not aggravating to a high degree, it still is a poor reflection on his character.

In sum, the nature of this offense, specifically the threatened harm to multiple victims, including an infant, justifies enhancement of Rutherford's sentence. Rutherford's character also is far from glowing. At best, his character fails to counteract the aggravating weight of the nature of the offense; at worst, it warrants its own aggravating weight. As such, we cannot say that Rutherford's six-year sentence is inappropriate.

### Conclusion

There is sufficient evidence to support Rutherford's convictions. However, his conviction for criminal recklessness must be vacated because of double jeopardy concerns. His six-year sentence for attempted battery is appropriate. We affirm in part, reverse in part, and remand for the trial court to vacate the criminal recklessness conviction and to correct the abstract of judgment to reflect Rutherford's conviction for attempted battery, not attempted murder.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and VAIDIK, J., concur.