**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 27 2013, 5:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY G. RAFF**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONTAY MARTIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1303-CR-113 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D05-1209-FA-39

**November 27, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Dontay Martin appeals his four attempted murder convictions and his sentence for those convictions. We affirm.

## Issues

Martin raises two issues, which we restate as:

I.      whether there is sufficient evidence to support his attempted murder convictions; and

II.     whether his sentence is inappropriate.

## Facts

In the early morning hours of September 9, 2012, Martin was at a nightclub in Fort Wayne with two of his fellow gang members, Alfonso Chappell and Traneilous Jackson. An altercation ensued between Jackson and Jermaine Loyall in which Jermaine was stabbed in the back.

An ambulance was summoned for Jermaine. Eric Zeigler of the Fort Wayne Fire Department arrived at the scene to drive the ambulance to the hospital while Jeromy Yadon and Diana Lantz treated Jermaine in the back of the ambulance. The ambulance left for the hospital, and Jermaine's sisters, Dominic Loyall and Latosha Loyall, followed the ambulance in a Chevy Impala driven by Dominic's friend, Lashonda Conwell.

Martin, Jackson, Chappell, and another man followed the ambulance in Chappell's car. Chappell was driving, Jackson was in the front passenger seat, and Martin was in backseat on the passenger side. Martin instructed Chappell to "follow the f*****g ambulance right now. Somebody got to f*****g die, they not making it to the hospital."

2

Tr. p. 156. When Chappell's car caught up with the Impala, Jackson was armed with his own Ruger, which could hold sixteen cartridges, and Martin was armed with Chappell's Glock 17 with an extended magazine, which was designed to hold thirty-four cartridges. As Chappell drove alongside the Impala, Jackson and Martin fired at it. Then, as Chappell drove alongside the ambulance, Jackson and Martin fired at it.

Although no one in the ambulance was shot, Yadon was injured by bullet fragments and glass shards. As for the occupants of the Impala, Conwell and Dominic were each shot once and Latosha was shot six times. At least twenty casings from the Glock were recovered at the intersection where the shooting occurred. Several casings from the Ruger were also recovered. Eighteen bullet holes were identified in the Impala, and at least seventeen bullet holes were identified in the ambulance. After the shooting, Chappell fled until police used stop sticks to disable his car.

On September 19, 2012, the State charged Martin with four counts of Class A felony attempted murder relating to Jermaine, Dominic, Latosha, and Conwell, one count of Class C felony carrying a handgun without a license, one count of Class C felony battery relating to Yadon, two counts of Class D felony criminal recklessness relating to Lantz and Ziegler, and one count of Class D felony criminal gang activity. A jury found Martin guilty as charged.[1]

Martin refused to cooperate with the preparation of a presentence investigation report. At the March 4, 2013 sentencing hearing, the trial court considered the nature of the offense and Martin's character, namely his criminal history, as aggravators. The trial

---

[1] The trial court entered the conviction on the handgun charge as a Class A misdemeanor.

court found no mitigators. The trial court sentenced Martin to forty years on each of the attempted murder convictions, one year on the handgun conviction, six years on the battery conviction, two years on each of the criminal recklessness convictions, and two years on the criminal gang activity conviction. The trial court ordered that the sentences for attempted murder, battery, and criminal recklessness be served consecutively because they involved different victims. The trial court ordered that the handgun and criminal gang activity convictions be served concurrent with the other sentences for a total sentence of 170 years. Martin now appeals.

**Analysis**

*I. Sufficiency of the Evidence*

Martin argues there is insufficient evidence to support his attempted murder convictions because there is insufficient evidence of his specific intent to kill. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. Bailey v. State, 979 N.E.2d 133, 135 (Ind. 2012). We view the evidence—even if conflicting—and all reasonable inferences drawn from it in a light most favorable to the conviction and affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.

"In a prosecution for attempted murder, the State must show a specific intent to kill." Kiefer v. State, 761 N.E.2d 802, 805 (Ind. 2002). "Intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime." Id. The trier

4

of fact may infer intent to kill from the use of a deadly weapon in a manner likely to cause death or great bodily harm. Id.

Here, shortly before the shooting, Jackson, Martin's fellow gang member, was involved in an altercation with Jermaine, and Jermaine was stabbed. When Martin and the others left in Chappell's car, Martin was aggressive and instructed Chappell to "follow the f*****g ambulance right now. Somebody got to f*****g die, they not making it to the hospital." Tr. p. 156. Chappell was instructed to pull alongside the Impala, at which point Martin and Jackson began shooting at it. When Chappell pulled alongside the ambulance, Martin and Jackson shot at it. At least twenty casings from the Glock Martin was armed with were recovered from the intersection where the shooting occurred. Eighteen bullet holes were identified in the Impala, and at least seventeen bullet holes were identified in the ambulance. The photographs of the vehicles, which were admitted into evidence, showed the location of the bullet holes. From this evidence, a jury could infer Martin's intent to kill. There is sufficient evidence to support the attempted murder convictions.

## II. Sentence

Martin challenges only the 160-year sentence for his attempted murder convictions as being inappropriate. Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision.

5

Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Martin contends that the 160-year sentence is, for all practical purposes, a life sentence and that a more appropriate sentence for the attempted murder convictions would be sixty-five years. Neither the nature of the offense nor Martin's character warrants the reduction of his sentence.

Regarding the nature of the offense, after a gang-related altercation at a nightclub that resulted in a stabbing, Martin instructed Chappell to follow an ambulance and a

6

vehicle associated with the victim. As they approached the vehicles, Martin and Jackson opened fire from a moving car in the middle of a city street. Dominic and Conwell were each shot once, and Latosha was shot six times. Further, in addition to endangering Jermaine, Martin's conduct endangered the emergency personnel who were tending to Jermaine's injuries. Chappell then led police on a chase through the streets of Fort Wayne. Nothing about the nature of the offense warrants a reduction of the sentence.

As for his character, twenty-three-year-old Martin had been released from incarceration only forty-eight hours before the incident. Further, although he refused to participate in the preparation of a presentence investigation report, the trial court noted at least four battery adjudications as a juvenile, some of which occurred while in detention, and convictions for resisting law enforcement and the receipt of a stolen firearm.[2] See Sent. Tr. p. 21. It also appears that Martin first became involved with the criminal justice system in 2004, evidencing a long history of his disregard for authority. Martin's character does not warrant reduction of his sentence.

## Conclusion

There is sufficient evidence to support the attempted murder convictions, and Martin has not established that his sentence is inappropriate. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.

---

[2] The trial court's recitation of Martin's criminal history was based on a previously prepared pre-sentence investigation report, which is not available for our review.