## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 11 2015, 6:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darius Altgilbers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 11, 2015

Court of Appeals Cause No.
49A05-1501-CR-14

Appeal from the Marion Superior
Court
Cause No. 49G05-1306-MR-41317

The Honorable Grant Hawkins,
Judge

**Barnes, Judge.**

# Case Summary

[1] Darius Altgilbers appeals his sentence for murder. We affirm.

# Issue

[2] Altgilbers raises one issue, which we restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Facts

[3] On June 23, 2013, seventeen-year-old Altgilbers, Jamie Tooley, Crystal Hampton, Daniel Tandy, Christopher Rogers, and Joshua Lewis were together at Tooley and Hampton's apartment in Indianapolis. The group needed money and discussed robbing someone. Altgilbers had a silver revolver, and Rogers had a black revolver. The group initially discussed robbing someone through Craigslist but abandoned that idea. They then decided to rob Hampton's friend, David, and Hampton and Tooley went to David's apartment. However, they also abandoned that plan. Early the next morning, Hampton and Tooley walked to a gas station where they met Bassirou Mahamadou, who agreed to give them a ride back to their apartment.

[4] During the ride, Tooley texted Altgilbers and a phone shared by Rogers and Lewis that they were getting a ride from someone they did not know and to "be ready." Tr. p. 89. When they arrived back at Tooley and Hampton's apartment, Hampton went inside. Only Tandy was in the apartment when Hampton arrived. Tooley stayed in Mahamadou's vehicle and talked to him

for a few minutes. When she got out of the vehicle, Mahamadou rolled down his window, and Altgilbers grabbed Tooley from behind. Altgilbers moved Tooley out of the way, and she ran into the apartment. When she got to the apartment, she heard several gunshots.

[5] Altgilbers, Rogers, and Lewis then returned to the apartment. They were "[p]anicking." *Id.* at 96. Altgilbers said that Rogers "kept shooting and so he said 'f' it and kept shooting too." *Id.* at 197. Hampton asked them what they did, and Altgilbers said, "You knew we was going to rob" him. *Id.* at 198. Lewis told them, "why would you shoot him if you didn't get anything and you all are stupid if you all still have the guns." *Id.* at 97. Altgilbers told Tooley that he was sorry. They put the guns in a grocery bag and got rid of them. Either Altgilbers or Rogers said that the guns were "in the woods." *Id.* at 198.

[6] Mahamadou sustained several gunshot wounds, including one to his neck that resulted in his death. When the police arrived, Altgilbers said that they should "just lay down and wake up in the morning and it would be over." *Id.* at 200. However, Tooley, Hampton, Tandy, and Lewis went outside. Tooley allowed the police to search her apartment, and they found a silver revolver cylinder in the apartment on the kitchen floor. The police later recovered a grocery bag containing two revolvers, one black and one silver, from woods behind the apartment building. The silver revolver was missing its cylinder, and the cylinder found in the apartment fit in the revolver. Altgilbers's DNA was found on the silver revolver, and Rogers's fingerprint was found on Mahamadou's vehicle. An analysis of the bullets found in Mahamadou's body showed that

two of the bullets were fired by the black revolver. The silver revolver could not be eliminated as having fired the bullet that entered Mahamadou's neck.

[7] The State charged Altgilbers with murder, Class A felony attempted robbery, and Class A felony conspiracy to commit robbery. A jury found Altgilbers guilty as charged. Because of double jeopardy concerns, the trial court sentenced Altgilbers only on the murder conviction. The trial court found that Altgilbers's criminal history, "though extensive, [was] insubstantial." *Id.* at 658. The trial court acknowledged some rehabilitation efforts while Altgilbers was incarcerated by attending classes or meetings. However, because the certificates were all signed by the same person within a short number of months, the trial court did not "know how much credit to give it." *Id.* at 659. The trial court also noted that Altgilbers had not responded to prior rehabilitation attempts and opportunities, that he fled Lake County to avoid a warrant for his arrest, and that there was a significant degree of planning in the instant case. The trial court found that the aggravators outweighed the mitigators and sentenced Altgilbers to sixty-three years in the Department of Correction with four years suspended to probation. Altgilbers now appeals.

## Analysis

[8] Altgilbers argues that his sixty-three-year sentence is inappropriate. Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Although Appellate Rule 7(B) does not require us to be "extremely"

deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[9] The principal role of Appellate Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224.

[10] The nature of the offense is that Altgilbers and his friends decided to rob someone because they did not have any money. Although they considered other plans, ultimately, Tooley and Hampton obtained a ride from Mahamadou, and Tooley sent a text to Altgilbers and the others to "be ready." Tr. p. 89. When they arrived, Altgilbers and Rogers shot Mahamadou. Altgilbers's silver revolver could not be eliminated as the weapon that fired the bullet that killed Mahamadou.

[11] Altgilbers argues that he was not the mastermind of the crime, that he "was hardly, if at all, a part of planning the robbery," and that he didn't suggest any potential victims. Appellant's Br. p. 8. However, the record shows that Altgilbers was present for the planning, he had multiple chances to cease participation in the crime, and he discouraged the others from talking to the police after the offense.

[12] As for the character of the offender, seventeen-year-old Altgilbers has an extensive juvenile criminal history. In 2009, he was adjudicated delinquent for acts that would have been Class A misdemeanor battery resulting in bodily injury and Class A misdemeanor criminal mischief. In 2010, he was adjudicated delinquent for an act that would have been Class A misdemeanor possession of marijuana. In 2012, he was adjudicated delinquent for an act that would have been Class A misdemeanor false informing. He failed to complete his community service and anger management counseling. He failed to comply with probation and, ultimately, was made a ward of the Department of Correction in 2012. In March 2013, a bench warrant was issued for Altgilbers for a probation violation. However, he ran away from home that month, went to Indianapolis, and committed the instant offense in June 2013.

[13] Altgilbers reported that his step-father was physically abusive to him. He was expelled from high school in the tenth grade for fighting. A 2010 psychological evaluation reported that he had a depressive disorder, disruptive behavior disorder, a cannabis dependence, a reading disorder, and histrionic personality traits with antisocial features. The report noted that he had experienced severe

physical and emotional trauma as a result of being beaten by his stepfather for a three-year period. He began drinking alcohol and smoking marijuana at the age of thirteen and had also abused Xanax.

[14] Altgilbers argues that he is "a traumatized young man who has . . . made poor choices under the duress of crushing emotional impediments." Appellant's Br. p. 11. He argues that he has tried to better himself by earning various certificates while in jail during his instant incarceration. He points out that both he and the State requested a sentence of fifty-five years, but the trial court imposed a sentence of sixty-three years.

[15] We acknowledge Altgilbers's difficult childhood and recent efforts to better himself. However, given Altgilbers's juvenile criminal history, failure to take advantage of prior rehabilitative opportunities, and the senselessness of the instant offense, we cannot say that the sentence imposed by the trial court is inappropriate.

## Conclusion

[16] The sixty-three-year sentence is not inappropriate. We affirm.

[17] Affirmed.

Riley, J., and Bailey, concur.