# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 14 2017, 9:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terrance L. Williams, *Appellant-Defendant,* | December 14, 2017 |
| | Court of Appeals Case No. 79A02-1705-CR-1001 |
| v. | Appeal from the Tippecanoe Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Randy Williams, Judge |
| | Trial Court Cause No. 79D01-1604-F5-48 |

**Barnes, Judge.**

## Case Summary

Terrance Williams appeals his convictions and four-year sentence for Level 5 felony battery and Class A misdemeanor invasion of privacy. We affirm.

## Issues

The issues before us are:

    I.      whether the trial court improperly entered judgment of conviction for a third count, Class A misdemeanor domestic battery; and

    II.     whether Williams's sentence is inappropriate.

## Facts

In 2016, Williams was in a romantic relationship with E.B. They lived together in Lafayette and had been dating for about three years. On March 30, 2016, E.B. had a doctor's appointment for a pregnancy she and Williams had learned of about a week earlier.[1] E.B.'s friend, Sierra James, took E.B. to the appointment while Williams stayed at the apartment. While E.B. was gone, Williams discovered a condom in her dresser, which angered him because he and E.B. did not use condoms.

When E.B. and James returned to the apartment, Williams confronted E.B. about the condom. The argument became physical, and Williams began

---

[1] The baby apparently was born at the end of October 2016, and Williams does not deny that he is the father.

shoving E.B. He also hit her with the bedroom door while she was standing in the doorway and pushed her so that she fell backwards over a laundry basket, causing a small cut on her back. E.B. called the police and told an officer who arrived that Williams had been pushing her around and injured her lower back. After the officer observed the injury and talked to Williams, he placed Williams under arrest.

[5] The State charged Williams with Count I, Level 5 felony battery resulting in bodily injury to a pregnant woman and Count II, Class A misdemeanor domestic battery. In conjunction with the filing of the charges, the trial court issued a no-contact order prohibiting Williams from having any direct or indirect contact with E.B. or James. However, while in jail awaiting trial, Williams twice called E.B., and those conversations were recorded.

[6] On November 11, 2016, Williams called E.B. and repeatedly blamed her for his being in jail and facing possible prison time, saying among other things "I'm f***ed now" and "I hope you and Sierra are happy now." Ex. 13. E.B., who was crying during most of the call, said, "Well first of all you shouldn't even be putting your hands on a pregnant woman period! Stop blaming me for your f***ing actions." *Id.* Williams continued berating E.B. for calling the police, allowing them to take pictures, and "pressing charges." *Id.* He said that, according to his bunkmate, if she and James signed and delivered to the trial court and prosecutor an "affidavit of innocence" stating that he had never touched E.B., he could have his case dismissed. *Id.* He asked her to do this "ASAP" and threatened to end their relationship unless she did so. *Id.* On

December 27, 2016, Williams again called E.B. He began by asking her where she was and who she was with. He then told E.B. that he had read in a discovery response that she wanted him to go to jail and said, "You pretty much just f***ed me." *Id.* He talked about rejecting a proposed plea agreement and said, "I'm f***ed unless you and Sierra go to trial and say that I didn't do s***." *Id.* E.B. seemed upset at the prospect of Williams going to prison for several years but said it was unlikely James would change her testimony. E.B. and Williams's baby was crying during this phone call, but Williams did not ask about or mention the baby.

[7] Because of Williams's contacting E.B. in violation of the no-contact order, the State thereafter filed a Count III, Class A misdemeanor invasion of privacy. A jury trial was held on March 7-8, 2017. James testified as to Williams's battery of E.B. E.B., however, denied that Williams had battered her and recanted her original statements to police, and said that she had accidentally tripped and fallen over the laundry basket. The jury found Williams guilty of all three counts. The trial court then stated, "The Court accepts the verdicts and enters judgment of conviction as to the three (3) counts. The issue of merger will be dealt with at the time of sentencing . . . ." Tr. p. 130. Subsequently, the trial court entered a written jury trial order, stating in part, "The Court enters JUDGMENT OF CONVICTION on Counts I, II and III." App. Vol. II p. 99.

[8] The trial court held a sentencing hearing on April 7, 2017. During the hearing, the trial court stated that Count II "merges" into Count I and that it would not impose a sentence on that count. Tr. p. 148. In a written sentencing order, the

trial court stated, "The Court finds that Count II merges into Count I, therefore the Court enters Judgment of Conviction on Counts I and III." App. Vol. II p. 102. The trial court imposed a sentence of three years for Level 5 felony battery and one year for Class A misdemeanor invasion of privacy, to be served consecutively for a total of four years. The trial court further ordered that only the three-year battery portion of the sentence would be served in the Department of Correction. Of that three years, the trial court ordered one year to be fully executed, one year to be served in community corrections, and one year to be suspended, and also that the invasion of privacy one-year term be suspended. Williams now appeals.

## Analysis

### I. Disposition of Domestic Battery Charge

[9] Williams contends that convictions for both Level 5 felony battery and Class A misdemeanor domestic battery would violate double jeopardy principles. The State does not dispute that point, but argues there is no double jeopardy violation because the trial court did not enter judgment of conviction for the Class A misdemeanor charge. It is true, as Williams points out, that the "merger" of one conviction with another after a judgment of conviction has been entered, or the imposition of concurrent sentences for two offenses, does not solve a double jeopardy problem. *Hines v. State*, 30 N.E.3d 1216, 1221 (Ind. 2015). However, "[w]here the court merges the lesser-included offense without imposing judgment, there is no need to remand on appeal to 'vacate.'" *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006).

Here, the trial court did originally state, after the jury returned its verdict, that it was entering judgments of conviction for both Count I, Level 5 felony battery, and Count II, Class A misdemeanor domestic battery. At sentencing, however, the trial court imposed no sentence for Count II. Furthermore, in its written sentencing order the trial court clearly stated that it was *not* entering a judgment of conviction for that count. To the extent the trial court may originally have stated its intention to enter judgment of conviction on that count, its subsequent statements effectively vacated that judgment or negated that intention. There are no penal consequences attaching to the finding of guilty on Count II, and there is no need for us to remand for the trial court to take any further action with respect to that count.

## II. Sentence

Williams also claims that his sentence is inappropriate under Indiana Appellate Rule 7(B) in light of the nature of the offenses and his character. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived

'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[13] For Williams's Level 5 felony conviction, he received an advisory term of three years, in the middle of the statutory one-to-six years range. *See* Ind. Code § 35-50-2-6(b). He received the maximum term for a Class A misdemeanor. *See* I.C. § 35-50-3-2. However, although the trial court ordered the sentences served consecutively, resulting in a total four-year term, the trial court was generous with respect to how that sentence would be served. Williams only has to spend one year incarcerated, one year in community corrections, and then two years suspended to probation. We will keep this in mind when evaluating the appropriateness of Williams's sentence.

[14] Williams contends that the nature of the offenses was not egregious. He notes that the bodily injury E.B. sustained was not substantial and that she was very early in her pregnancy. We can agree with Williams's characterization of the

injury but not with his minimizing of the battery based on the early stage of E.B.'s pregnancy. There should be no serious doubt that battery of a pregnant woman could result in injury to her fetus as well, regardless of the stage of pregnancy. And, it is clear that Williams was aware of the pregnancy. As for Williams's invasion of E.B.'s privacy, we find it to be highly egregious and inextricably intertwined with his battery conviction. Williams's conduct is a precise reason no-contact orders are entered in cases such as this. He played on the emotions of a woman who had just given birth, daring to repeatedly blame her for his predicament and insisting that she recant her statements to police. Eventually, Williams was successful in emotionally browbeating E.B. into changing her story and testifying that she had lied in her earlier statements to police and when she said in the first jail phone call that Williams should not have put his hands on a pregnant woman.

[15] As for Williams's character, he was nineteen at the time of the offense and twenty at sentencing. His juvenile history began in 2013 at the age of sixteen, when he acquired two delinquency adjudications for what would be Class D felony theft. Thereafter, multiple modifications of Williams's probation were filed for things such as testing positive for marijuana, failing to appear for drug screens, and failing to abide by house arrest rules. On four occasions, the modification motions were granted, and in 2014, Williams's juvenile probation was terminated as unsuccessful. After committing these offenses in this case and while out on bond, Williams was charged with Class A misdemeanor possession of a synthetic drug; he was convicted of that offense before his trial

in this case. Williams attempts to downplay the significance of this criminal history, noting in part that it is for non-violent offenses. That is true, but the sheer number of offenses within a short period of time, along with his repeated violations of juvenile probation, reflect very poorly on his character.

[16] Williams contends that he displayed good character by taking classes in jail to received his GED and that he received extensive support from his family at sentencing. He also claims that he has a "new perspective" on life after the birth of his child. Appellant's Br. p. 11. This alleged "new perspective" was not on display in Williams's calls to E.B. after the child's birth. Rather, Williams was entirely self-interested, did not express any remorse, and was more interested in his own welfare than that of either E.B. or his child. In fact, although Williams at one point expressed sadness that he would not be present for his child's first Thanksgiving and Christmas, he never once asked about how the baby was doing, even when she was crying during the second phone call. In sum, whatever good character is demonstrated by Williams's pursuit of a GED and his extended family support is counterbalanced by his criminal history and the character displayed in his calls to E.B.

[17] For Williams's Level 5 felony battery of his girlfriend while she was pregnant with his child and his subsequent invasion of E.B.'s privacy, he received a sentence of one year fully executed, one year in community corrections, and two years suspended. That does not strike us as at all inappropriate in light of the nature of the offenses and Williams's character.

# Conclusion

Because the trial court effectively vacated any conviction for Class A misdemeanor domestic battery and it did not impose a sentence for that count, we need not remand for the trial court to take any further action. Furthermore, Williams's sentence is not inappropriate. We affirm.

Affirmed.

May, J., and Bradford, J., concur.