## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

May 04 2018, 10:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Phillip Evans,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 4, 2018

Court of Appeals Case No.
84A01-1709-CR-2116

Appeal from the Vigo Superior
Court

The Honorable Michael J. Lewis,
Judge

Trial Court Cause No.
84D06-1401-MR-51

**Barnes, Judge.**

## Case Summary

[1]    Phillip A. Evans appeals his sixty-year sentence for murder.  We affirm.

# Issue

The sole issue before us is whether Evans's sentence is inappropriate in light of the nature of the offense and his character.

# Facts

Pamela Jones and her boyfriend, Devlin Decker, planned to host a party in Terre Haute on December 31, 2013. That evening, they picked up Decker's uncle, Evans, and his roommate, Joshua Thomas. They stopped briefly at a gas station so Evans could withdraw money from an ATM. Evans returned to the car and angrily accused Thomas, whom he had earlier allowed access to his bank card, of withdrawing money from his account. Thomas denied doing so. They all returned to Jones's home and drank until they were intoxicated.

Later, Thomas began to flirt with Jones. Decker and Thomas argued and began to fight. The fight spilled outside. Evans, who was still angry with Thomas, followed Decker and Thomas outside. Evans watched as Decker kicked and punched Thomas repeatedly. Jones's next door neighbors, Eric and Diana Goucher, heard the commotion, looked outside, and saw Thomas with "his hands up . . . saying I'm sorry, please stop[.]" Tr. p. 179. Decker knocked Thomas off the porch onto the concrete surface below. When Thomas rose to his hands and knees, Decker lifted a wooden table weighing approximately fifty pounds and slammed it down onto his head. Decker then walked back into Jones's house. When Thomas attempted to re-enter the house, Evans pinned him against the house, "kind of looked around and took a step back and hit

him." *Id*. at 26. Thomas's body went limp and "fell onto [Evans]." *Id*. at 27. Both men crashed off the porch with Evans landing on top of Thomas. The noise brought Decker running from the house; he jumped off the porch, and "started to stomp [Thomas] in the head and Phillip Evans started to kick [Thomas] in the side." *Id*. at 29. Thomas was unconscious.

[5] Diana Goucher dialed 911 "telling them they need[ed] to hurry up cause [Decker and Evans were] gonna hurt [Thomas] bad." *Id*. at 181. "[T]hey were kicking him so hard that, in the head and stuff [that she] looked away at one point." *Id*. Decker and Evans stopped their attack on Thomas when they "saw [the Gouchers] looking out the window" at them. *Id*. Decker enlisted a newly-arrived party guest, Camron Wormser, to help him move Thomas. As Wormser helped drag Thomas, Decker resumed kicking Thomas's head.

[6] Officers of the Terre Haute Police Department arrived at the scene. Decker ran into Jones's house in a panic and told her that he had stabbed Thomas. Soon thereafter, Evans came into the house and told Jones and Wormser's girlfriend, Courtney Dailey, that he too had stabbed Thomas. Medical responders transported Thomas to the hospital, where he died. An autopsy revealed multiple abrasions to his head and torso as well as three stab wounds, one of which had perforated his heart, killing him.

[7] Evans told Detective Darren Long of the Terre Haute City Police Department that he had called 911; that four members of the Aryan Brotherhood had attacked Thomas; and that they had knocked Evans unconscious when he tried

to render aid. The Gouchers contradicted Evans's account and advised that Evans was "not a witness" but a participant in the attack on Thomas. *Id*. at 95.

[8] On January 8, 2014, the State charged Evans with murder and Class B felony aggravated battery, later filing an additional information alleging that he was an habitual offender. He was tried by a jury and found guilty as charged on May 11, 2017. On August 16, 2017, the trial court imposed a sixty-year sentence for the murder conviction and enhanced that sentence by thirty years because Evans was an habitual offender. He now appeals his sixty-year sentence.[1]

## Analysis

[9] Evans argues that his sixty-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. *Id*. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*. Under this rule, the burden is on the defendant to

---

[1] Evans does not challenge the thirty-year habitual offender enhancement.

persuade the appellate court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006).

[10] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived correct result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State,* 926 N.E.2d 1023, 1025 (Ind. 2010).

[11] Under Indiana Code Section 35-50-2-3, a person convicted of murder "shall be imprisoned for a fixed term of between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years." Evans argues that his sixty-year sentence is inappropriate because "Decker was the primary aggressor"; that his own "actual participation in the fight was . . . not as involved as Decker's"; that Decker "apparently inflicted the fatal stab wounds"; that the most serious offense on his extensive criminal history is a Class C felony; that he suffers from mental illness and alcohol abuse; that he expressed remorse at sentencing and offered condolences to Thomas's family; and that he "did not intend to seriously harm or kill Thomas," whom he "had taken in"

and "provided . . . with a home when Thomas needed help." Appellee's Br. p. 12, 13, 14.

[12] Regarding the nature of the offense, the record reveals that Evans and Decker both viciously kicked, punched, and stabbed Thomas in an attack that ended his life. The record is clear that Thomas died of a knife wound to his heart. As for his character, in 1992, Evans was admitted to an inpatient program as a juvenile "for his violent behavior" and "was diagnosed with oppositional defiant disorder and conduct disorder." Conf. App. Vol. III, p. 11. In 2001, he was court-ordered to attend anger management courses, but was discharged for failing to attend sessions. His pre-sentencing investigation report states, "[He] stated that he is innocent in this case and that his drinking caused him to lie to the police"; "[h]e has abused alcohol for many years and been referred to treatment multiple times"; but "[h]e has never successfully completed treatment." *Id.*

[13] Evans's criminal history includes three juvenile adjudications for theft and alcohol consumption by a minor, as misdemeanors, and felony criminal recklessness. As an adult, he has ten misdemeanor convictions for alcohol consumption by a minor, driving with a suspended license (twice), receiving stolen property, glue sniffing, public intoxication (three times), criminal trespass, and possession of marijuana, as well as five felony convictions for sexual battery, battery resulting in bodily injury, intimidation, and failure to register as a sex offender, as Class D felonies, and Class C felony battery resulting in bodily injury. In the instant offense, Evans looked on as Decker

brutally kicked, punched, and smashed a fifty-pound table on Thomas's head. For his part, Evans looked around to see if he was being watched before he stabbed Thomas; he also kicked Thomas as he lay unconscious and lied to police investigators at the scene.

Evans's multiple contacts with the criminal justice system and court-ordered participation in treatment programs or alcohol and drug abuse and mental health issues have not deterred him from violent crime. Given his extensive criminal history, including multiple battery convictions, his inability and unwillingness to address his alcohol problem and to correct his behavior, the viciousness of his attack on Thomas, and his fabricated claims of rogue assailants and his own heroics, we cannot say that his sentence is inappropriate.

## Conclusion

Evans's sixty-year sentence is not inappropriate. We affirm.

Affirmed.

Vaidik, C.J, and Pyle, J., concur.