## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 30 2020, 11:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Catherine E. Brizzi
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tabetha Lynn Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 30, 2020

Court of Appeals Case No.
19A-CR-2129

Appeal from the Vigo Superior Court

The Honorable Sarah K. Mullican, Judge

Trial Court Cause No.
84D03-1804-F1-1294

**Pyle, Judge.**

## Statement of the Case

Tabetha L. Smith ("Smith") appeals the sentence imposed after she pled guilty to Level 3 felony neglect of a dependent.[1] Her sole argument is that her sentence, part of which the trial court ordered her to serve at the Department of Correction ("DOC"), is inappropriate. Concluding that Smith has failed to show that her sentence is inappropriate, we affirm the sentence.

We affirm.

## Issue

Whether Smith's sentence is inappropriate.

## Facts

Smith's son, A.S. ("A.S."), was born on December 3, 2017 at Methodist Hospital in Indianapolis. He was Smith's seventh child. A.S. weighed only four pounds, thirteen ounces at birth and suffered from numerous medical issues, including Down Syndrome, two holes in his heart, respiratory issues, swallowing issues, and intestinal issues that required him to use a nasal feeding tube. Because of his low birth weight and medical issues, A.S. was transferred to Riley Hospital ("Riley"). His physician at Riley was Dr. Christiansen ("Dr. Christiansen").

---

[1] IND. CODE § 35-46-1-4.

[4]     Riley discharged A.S. on January 8, 2018.  Riley staff trained Smith how to use the feeding tube and told her not to feed A.S. with a bottle.  At the time of his discharge, A.S. weighed approximately six pounds.  Smith took A.S. to her home in Terre Haute.

[5]     A.S. had a follow-up appointment scheduled on January 10.  Although the record is not clear whether the appointment was scheduled with Riley or with Terre Haute pediatrician Dr. Chakrabarti ("Dr. Chakrabarti"), Smith did not take A.S. to the appointment.  On January 12, Smith removed A.S.'s feeding tube and began feeding A.S. with a bottle.  Smith failed to take A.S. to a second follow-up appointment on January 23.

[6]     Smith eventually took A.S. to see Dr. Chakrabarti on January 26, when she told the doctor that she had not been using the feeding tube for two weeks.  Dr. Chakrabarti's notes indicate that Riley was not aware that Smith had removed the feeding tube.  In early February, a doctor told Smith to reinsert the feeding tube, but Smith chose not to do so.  Instead, she wanted to "try to get a second opinion on if he even needed the feeding tube." (Tr. at 69).  Smith never sought a second opinion.

[7]     On February 27, Smith took A.S. to an appointment with Dr. Christiansen at Riley.  A.S. weighed approximately six pounds, thirteen ounces.  Smith told Dr. Christiansen that she had been feeding A.S. with a bottle for six weeks.  Dr. Christiansen told Smith to make sure that A.S. consumed a specific amount of formula each day and to frequently check his weight.

[8]     Smith and A.S. missed an appointment with Dr. Chakrabarti on March 7 because Smith had a dental appointment. Later that day, Smith took A.S. to a local clinic to check his weight, which was approximately seven pounds and three ounces. When Smith contacted Dr. Christiansen to inform her of A.S.'s weight, the doctor told Smith to reinsert the feeding tube because A.S. was not gaining enough weight. Smith did not reinsert the feeding tube, and A.S. died four days later from severe dehydration.

[9]     The State charged Smith with Level 1 felony neglect of a dependent resulting in death, Level 3 felony neglect of a dependent resulting in serious bodily injury, Level 5 felony neglect of a dependent resulting in bodily injury, and Level 6 felony neglect of a dependent. Smith pled guilty to the Level 3 felony pursuant to a plea agreement. The agreement further provided that the State would dismiss the additional charges, and that Smith would be sentenced to sixteen years. The agreement also provided that the parties would "argue how that 16 year sentence [would be] served, whether it be in the Department of Correction, Community Correction, and/or probation, or any combination of the three." (App. Vol. 2 at 70).

[10]    At the July 2019 sentencing hearing, Smith admitted that although Dr. Christiansen had told her on March 7 to reinsert A.S.'s feeding tube because A.S. was not gaining enough weight, Smith had continued to feed A.S. with a bottle. When asked why she had not followed the doctor's instructions, Smith responded that she did not know.

[11]     After Smith had finished testifying, the trial court asked the parties if they had any objection to it reviewing A.S.'s medical records from Riley, Dr. Christiansen, and Dr. Chakrabarti. The parties had no objection but advised the trial court that the records included more than 2000 pages. The trial court asked the parties to agree on the medical records that they wanted to submit for its review and explained that the medical records would not become part of the record. The trial court also explained that it would continue the hearing to allow the court to review the medical records. Neither party objected.

[12]     When the sentencing hearing continued in August 2019, the trial court told the parties that it had read A.S.'s medical records and had "spent a lot of time looking at the Riley record[.]" (Tr. at 84). The trial court reviewed its notes in court and asked the parties questions. Thereafter, the parties made their arguments. The State asked the trial court to sentence Smith to sixteen years in the DOC, and Smith responded that she did not "believe an incarceration [was] necessary from this point on." (Tr. at 93).

[13]     The trial court found Smith's history of mental illness to be a mitigating factor. The trial court also found the following aggravating factors: (1) Smith's criminal history, which included two misdemeanor convictions; (2) A.S. was less than twelve years old; (3) A.S. was disabled; and (4) A.S. was in Smith's care and custody.

[14]     The trial court then sentenced Smith as follows:

But this is still an extremely fragile baby. [He] needed a great deal of care. And the reasons why the nasal tube was there was because the - there w[ere] swallowing issues and [an] inability to um, ingest the formula. Um, I think you repeatedly ignored the doctor, even though Riley told you that that tube had to be back in and you just didn't do it. I, I don't know why; you said you don't know why um, but that clearly is what led to the death of the child. So the Court is gonna impose the sixteen (16) year sentence. I'm gonna execute twelve (12) and suspend four (4), and place you on formal probation, all of which will be executed in the Department of Correction[].

(Tr. at 97). Smith now appeals her sentence.

# Decision

[15] Smith argues that her sentence is inappropriate. She does not challenge the duration of her sentence, which was set forth in the plea agreement. Rather, she challenges the trial court's sentencing decision regarding her placement in the DOC.

[16] Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a

perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[17] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Smith was convicted of a Level 3 felony. The sentencing range for a Level 3 felony is between three and sixteen years with an advisory sentence of nine years. *See* I.C. § 35-50-2-5(b). The trial court sentenced Smith to sixteen years consistent with the terms of the plea agreement and ordered her to serve twelve years in the DOC and four years on probation.

[18] The location where a sentence is to be served is an appropriate focus for our review and revise authority under Appellate Rule 7(B). *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). However, this Court has previously explained that it will be "quite difficult" for a defendant to prevail on a claim that her sentence is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). This is because "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Id.* at 344 (emphasis in original). A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate. *Id.*

[19] Turning to the nature of Smith's neglect of a dependent conviction, we note that Smith's son, A.S., was born with numerous medical issues, including

Down Syndrome, two holes in his heart, respiratory issues, swallowing issues, and intestinal issues that required him to use a nasal feeding tube. When A.S. was discharged from the hospital, Riley staff trained Smith to use the feeding tube and specifically told her not to feed A.S. with a bottle. Despite A.S.'s fragile condition and Riley's specific instructions, Smith failed to attend scheduled follow-up appointments, removed the feeding tube, and began to feed A.S. with a bottle. In early February, a doctor told Smith to reinsert the feeding tube. Smith refused to do so stating that she wanted a second opinion as to whether A.S. needed a feeding tube. Smith never got that second opinion. On March 7, after missing A.S.'s appointment to attend a dental appointment, Smith took A.S. to a local clinic for a weight check. When Smith told Dr. Christiansen how much A.S. weighed, the doctor told Smith to reinsert the feeding tube because A.S. was not gaining enough weight. Smith disregarded the doctor's instructions, and A.S. died four days later of severe dehydration.

[20] Turning to the nature of Smith's character, we note that she has two prior misdemeanor convictions. Even a minor criminal history reflects poorly on a defendant's character for the purposes of sentencing. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Smith's character is further revealed by her utter disregard for the health and welfare of her fragile two-month old baby and by her refusal to heed the instructions of medical providers on how to meet the basic needs of her child.

Smith has failed to meet her burden to persuade this Court that placement in the DOC for twelve years for her Level 3 felony neglect of a dependent conviction is inappropriate.

Affirmed.

Baker, J., and Bradford, J., concur.