## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2015, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

Attorney for Appellant

Andrew J. Sickmann
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

Attorneys for Appellee

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Virant,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 31, 2015

Court of Appeals Cause No.
89A05-1502-CR-85

Appeal from the Wayne Circuit Court

The Honorable David A. Kolger, Judge

Trial Court Cause No.
89C01-1312-FA-33

**Barnes, Judge.**

# Case Summary

Jeremy Virant appeals his sentence for Class A felony burglary and his status as an habitual offender. We affirm.

# Issue

Virant raises one issue, which we restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Facts

On December 3, 2013, Lane Deaton and his step-father, Michael Hickmott, argued over a broken window in Hickmott's vehicle, which Deaton had borrowed. The police were called, and Officer Stephen Foster of the Cambridge City Police Department advised Deaton to leave for a while. Deaton walked down the street and saw Brian Hook. Deaton went to Hook's house, where he met Virant. Deaton was upset, and Virant told him, "they were going to take care of it tonight. [He] wouldn't have to worry about it." Tr. p. 301. Officer Foster later stopped to talk to Deaton in front of Hook's house and gave Deaton a ride to a friend's house.

Virant, Hook, and Joshua Bishop later went to Hickmott's house and knocked on the door. When Hickmott answered the door, Virant and Hook pushed their way into the house and repeatedly punched and hit Hickmott. Hickmott's severely disabled fifteen-year-old daughter was in her bedroom during the attack. When Deaton and his friends returned to Hickmott's residence, Deaton

saw shadows through the front window that were kicking something. When he entered the residence, he saw Virant and Hook standing over Hickmott, who was bleeding heavily. Hickmott begged for help and said they were trying to kill him. Deaton convinced Virant and Hook to talk to him outside. Virant said that "they got him good." *Id.* at 308. While they were outside, Hickmott escaped out the back door and called 911 from a neighbor's house. When Hickmott saw officers at his house, he tried to go back to his house but was found unconscious in the yard. He sustained facial and head injuries, bruising to his body, and was required to wear an air cast on his ankle for a week.

[5] The State charged Virant with ten counts: Count I, Class A felony burglary; Count II, Class A felony burglary; Count III, Class A felony conspiracy to commit burglary; Count IV, Class C felony battery; Count V, Class C felony conspiracy to commit burglary; Count VI, Class C felony battery; Count VII, Class D felony residential entry; Count VIII, Class D felony conspiracy to commit residential entry; Count IX, Class A felony burglary; and Count X, Class A felony conspiracy to commit burglary. The State also alleged that Virant was an habitual offender. In January 2014, Virant agreed to plead guilty to certain charges, but the trial court rejected the plea agreement after Virant refused to participate in the presentence investigation report. In February 2014, Virant filed a motion to reinstate the plea agreement, which the trial court denied. In March 2014, Virant again attempted to plead guilty. However, the trial court again rejected the plea agreement, apparently due to allegedly perjured testimony at the guilty plea/sentencing hearing.

[6] In December 2014, the State filed a motion to dismiss Counts III, V, VII, VIII, IX, and X, which the trial court granted. Virant then filed another motion to reinstate the plea agreement, which the trial court denied. A jury trial on Counts I, II, IV, VI, and the habitual offender allegation was held in January 2015. The jury found Virant guilty as charged, and Virant admitted the habitual offender allegation.

[7] At sentencing, the trial court entered judgment of conviction only on Count I, Class A felony burglary due to double jeopardy concerns. The trial court found the following aggravators: Virant's criminal history, the fact that the offense was committed with Hickmott's disabled daughter in the house, the fact that Virant committed the offense while on parole, Virant's lack of remorse, and his jail violations while awaiting trial. The trial court found Virant's difficult childhood and guilty plea to the habitual offender allegation to be minor mitigators. The trial court gave no mitigating weight to Virant's mental health issues and intoxication at the time of the offense. The trial court sentenced Virant to forty-two years for the Class A felony conviction, enhanced by thirty years due to Virant's status as an habitual offender. Virant now appeals.

## Analysis

[8] Virant argues that his seventy-two-year sentence is inappropriate. Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Although Appellate Rule 7(B) does not require us to be "extremely"

deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[9] The principal role of Appellate Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224.

[10] The nature of the offense is that Virant broke into Deaton's house and severely beat Deaton's stepfather. Virant admitted that he hit Hickmott thirty to forty times. Hickmott's disabled daughter was in the house at the time, and Virant repeatedly threatened to kill Hickmott. Virant only stopped when Deaton intervened.

[11] As for Virant's character, he has a substantial criminal history. He has juvenile adjudications for criminal conversion and theft. He has two adult convictions for misdemeanor resisting law enforcement and felony convictions for Class B felony burglary, Class C felony intimidation, and Class D felony battery resulting in bodily injury on a correctional officer. Virant's probation has been revoked three times, and he was on parole at the time of this offense. Two days after he was released on his own recognizance in this case, he was arrested for Class D felony auto theft. While in jail awaiting trial, he had multiple major rule violations. The trial court properly noted that Virant was "a danger to everybody that [he came] into contact with." Tr. p. 542.

[12] Virant argues that his actions were the result of "circumstances that are unlikely to recur." Appellant's Br. p. 8. However, the State properly notes that Virant's actions in this case demonstrate further his "propensity for violence and breaking the law." Appellee's Br. p. 10. Given Virant's history of violence and criminal activity, the trial court properly rejected this proposed mitigator. Virant also argues that the trial court should have reduced his sentence due to his repeated attempts to plead guilty. The trial court rejected his first attempt to plead guilty after he refused to participate in the presentence investigation. The trial court later rejected another attempt to plead guilty after he allegedly perjured himself. The trial court did give Virant's guilty plea to the habitual offender allegation some mitigating weight. However, given Virant's unsuccessful attempts to plead guilty to the main charges and his lack of

remorse, the trial court properly refused to give his guilty plea attempts mitigating weight.

[13] Given Virant's senseless attack on a stranger and his substantial criminal history, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

[14] The sentence imposed by the trial court is not inappropriate. We affirm.

[15] Affirmed.

Kirsch, J., and Najam, J., concur.