# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 29 2016, 9:37 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Olivero
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lyle M. Moser, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 29, 2016 <br><br> Court of Appeals Cause No. <br> 02A03-1505-CR-418 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Jr., Judge <br><br> Trial Court Cause No. <br> 02D06-1404-FC-119 |

**Barnes, Judge.**

# Case Summary

[1] Lyle Moser appeals his conviction and sentence for Class C felony fraud on a financial institution. We affirm.

# Issues

[2] Moser raises two issues, which we restate as:

      I.     whether there is sufficient evidence to support his conviction; and

      II.    whether his eight-year sentence is inappropriate.

# Facts

[3] On the afternoon of Friday, December 13, 2013, Moser used an ATM to deposit two checks at Star Financial Bank ("Star"), a federally-insured institution. One check for $2,059.90 purported to be a cashier's check and identified South American Climbing as the remitter. The other check was for $1,400.00 and was purported to have been issued by Community Caregivers in Ohio. When Moser made the deposit, his account balance was zero.

[4] Immediately after Moser made the deposit, he began checking the balance and attempted to withdraw money from the account. The funds were posted to Moser's account the next day, and he used his ATM card to make several cash withdrawals and purchases. By Sunday evening, there were insufficient funds in the account, and the ATM card was declined by a merchant.

When Star attempted to process the checks the next week, both checks were dishonored by their respective banks. Michelle Halter, a security analyst and senior investigator for Star, began an investigation. She noticed typos on both checks and saw that one of them previously had been presented for payment and rejected. Halter contacted Moser regarding the checks. Moser explained to Halter that he received the checks as payment for car parts he sold on Craigslist. Moser denied having been overpaid and offered to bring in the envelopes the checks were mailed in but never did.

On April 29, 2014, the State charged Moser with Class C felony fraud on a financial institution. That same day, Moser sent a letter to the prosecutor's office describing himself as a victim of a Craigslist scam, offering to repay the money, and indicating that he could provide emails and envelopes to support his claim. The letter indicated he had spoken with a detective and would meet with the detective when he returned to Indiana. Moser never contacted the detective, produced the emails, or repaid Star.

A jury found Moser guilty as charged. The trial court sentenced him to eight years in the Department of Correction. Moser now appeals.

# Analysis

## I. Sufficiency

Moser argues there is insufficient evidence of his intent to defraud Star. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133,

135 (Ind. 2012). We view the evidence—even if conflicting—and all reasonable inferences drawn from it in a light most favorable to the conviction and affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[9] At the time Moser committed the offense, Indiana Code Section 35-43-5-8(1) defined Class C felony fraud on a financial institution as knowingly executing or attempting to execute a scheme or artifice to defraud a state or federally-chartered or federally-insured financial institution. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[10] Moser contends the State did not prove that he knowingly defrauded Star. He refers us to his letter to the prosecutor describing himself as a victim of a Craigslist scheme and to his testimony explaining the inconsistencies in his various versions of events.

[11] The evidence most favorable to the verdict, however, established that Moser knowingly defrauded Star. For example, there were obvious typos on both checks including the misspelled "remmitter," the lack of capitalization of Moser's last name, and an extra period in an address line. Ex. 3. Also, when Moser attempted to cash one of the checks, it was declined, and he was instructed to take the check to his bank. Instead, he deposited the checks into an account with a zero balance at an ATM on a Friday afternoon while the

bank was open and then performed several balance inquires, withdrawals, and purchases, ultimately depleting the funds in two days, before the checks were processed by Star.

[12] Further, Moser's statements to Halter and the prosecutor were riddled with inconsistencies and were inconsistent with his trial testimony. Despite claiming to have emails and envelopes to support his story of being a victim of a Craigslist scheme, he never produced the emails and waited until the trial to present the envelopes that did not positively verify his story. At trial, Moser claimed that one person purchased the car and parts he had listed for sale on Craigslist and sent Moser three checks, one from Community Caregivers, one from South American Climbing, and one from Sears Optical, in advance of receiving the car and parts. Moser claimed he never cashed the third check and had the envelope at home. He also testified that the car and parts were picked up after he became aware the checks were bad, but he did not report the incident to the police.

[13] Finally, Moser testified that his asking price for the car was $1,500.00, which he sold for $2,059.00, and that the asking price for the parts was $500.00, which he sold for $1,400.00. Moser agreed that the purchaser overpaid by roughly $1,500.00 and claimed that the purchaser instructed him to pay the two people who picked up the car and parts $500.00 each. This is inconsistent with Halter's testimony that, when she spoke with Moser, he claimed there was no overpayment.

[14] From this evidence, the jury could conclude that Moser knowingly defrauded Star. Moser's arguments to the contrary are a request to reweigh the evidence, which we cannot do.

## II. Sentence

[15] Moser argues that his eight-year sentence is inappropriate. Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Although Appellate Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[16] The principal role of Appellate Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime,

the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Appellate Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[17] Even if the nature of the offense is not particularly egregious, Moser did present three different versions of the crime, ultimately painting himself as a victim of a Craigslist scheme. Regarding his character, forty-year-old Moser has seventeen misdemeanor convictions and eight felony convictions. His felony convictions include burglary, receiving stolen property, receiving stolen auto parts, theft, and three counts of fraud. His misdemeanor convictions include multiple counts of check deception and criminal conversion. As the trial court aptly observed, Moser "has no respect for other people, or for the rules of society. He clearly is a thief . . . ." Sentencing Tr. p. 13. Moser has not shown that his sentence is inappropriate.

## Conclusion

[18] There is sufficient evidence to support Moser's conviction and he has not established that his sentence is inappropriate. We affirm.

[19] Affirmed..

Robb, J., and Altice, J., concur.