## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 20 2016, 9:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Justin F. Roebel
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry W. Scroggins, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 20, 2016 <br><br> Court of Appeals Case No. <br> 40A04-1510-CR-1745 <br><br> Appeal from the Jennings Circuit Court <br><br> The Honorable Jonathan W. Webster, Judge <br><br> Trial Court Cause No. <br> 40C01-1504-F4-13 |

**Mathias, Judge.**

[1]     Larry Scroggins ("Scroggins") was convicted in Jennings Circuit Court of burglary as a Level 4 felony and ordered to serve a maximum twelve-year

sentence. Scroggins appeals and argues that the only evidence supporting his conviction is incredibly dubious testimony and that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] In April 2015, Scroggins and his girlfriend, Rebecca Goodwin ("Goodwin"), lived with several other individuals in a mobile home next door to Martha Bodenheimer ("Martha"). Martha, who was sixty-six years old, lived alone in her mobile home.

[4] On April 9, 2015, Martha left her home at approximately 10:00 a.m. to go to work. Later that morning, Scroggins used a screwdriver to pry open Martha's back door. He entered the home and took several items including her television, a laptop, several cameras, an external hard drive, hydrocodone pills, and jewelry. Scroggins placed the items in the bedroom he shared with Goodwin in the mobile home next door.

[5] When Martha returned home from work that afternoon, she saw that her home had been ransacked and noted several items were missing. She called the sheriff's department to report the burglary and shared her suspicion that her neighbors might have burglarized her home.

[6] On April 10, 2015, Scroggins's wife reported to his parole officer that he had not been living at their home, but with his girlfriend, Goodwin. Therefore, Scroggins's parole officer took him into custody for violating his parole. Scroggins's was detained at the local jail.

[7] On that same day, Goodwin began to sell the items stolen from Martha's home. At approximately 7:00 p.m., Martha saw Goodwin carrying what appeared to be her television out to a car. Martha confronted Goodwin and matched the serial number of the television Goodwin was carrying to the one stolen from her home. Martha again called the sheriff's department to report the information. Goodwin told the sheriff's deputy that she had purchased the television online. The deputy told Goodwin that the prosecutor could file charges against her for possession of stolen property, but Goodwin was not arrested.

[8] On April 11, 2015, Scroggins called Goodwin from the jail. Scroggins repeatedly told Goodwin that he needed money to put on his "books." Tr. pp. 190-91. Scroggins also asked Goodwin if she had gotten "rid of any of that other stuff." Tr. p. 198. The following conversation took place:

> Scroggins: What all did you get rid of?
> Goodwin: Um, I'm not really saying.
> Scroggins: Well, I'm not, you can hint around, the biggest thing?
> Goodwin: Um, yes.
> Scroggins: What did you only get $70 out of that?
> Goodwin: No.

Scroggins: Or did you get $100 out of it.

Goodwin: No, they didn't want it.

\*\*\*

Scroggins: Okay, so what about the other small things? . . . The thing I was hooking up the other day?

Goodwin: No, the one I said I wanted to keep.

Scroggins: Yeah… $70 for that?

Goodwin: Yeah.

Scroggins: All right.

Goodwin: And then that's it.

Scroggins: Oh, you still got everything else?

Goodwin: Um, that uh, photo device?

Scroggins: Yeah

Tr. pp. 198-200. Scroggins told Goodwin she could give "Nellie" the photo device he referred to. They also discussed that "Robert" came and got "them earrings and that ring." Tr. p. 200.

[9]   Later that day, other individuals living in the mobile home with Goodwin confronted her after they found a large amount of cash and several cameras that belonged to Martha. They then told Martha what they had found, and Martha reported the discovery to the sheriff's department. A sheriff's deputy searched Scroggins's and Goodwin's bedroom and found Martha's hydrocodone pills, her jewelry, and camera bag that contained several cameras and other items. Goodwin was wearing one of Martha's rings when she was arrested. She

admitted to the officer that she and Scroggins had taken the items from Martha's home.

[10] On April 15, 2015, Scroggins was charged with burglary, as a Level 4 felony and Class A misdemeanor theft. A jury trial was held on August 4 and 5, 2015. Scroggins was found guilty as charged.

[11] A sentencing hearing was held on October 2015. The trial court determined that Martha's age and Scroggins's criminal history, consisting of five felonies, were aggravating circumstances. The court also considered that Scroggins lied to the probation officer who prepared the pre-sentence investigation report. Specifically, when asked whether Scroggins had used the alias "Brent Herndon," Scroggins claimed that he had been the victim of identity theft. After further investigation, the probation officer discovered that Scroggins and Herndon, were, in fact, the same individual. The trial court found Scroggins's completion of an anger management program and obtaining his GED to be mitigating. However, the court sentenced Scroggins to the maximum twelve-year sentence after concluding that the aggravating circumstances far outweighed the mitigating circumstances. Scroggins now appeals.

**Incredibly Dubious Testimony**

[12] Scroggins argues that his burglary conviction is supported only by Goodwin's testimony, which is so incredibly dubious that his conviction must be reversed. The incredible dubiosity rule allows the court "impinge on the jury's responsibility to judge the credibility of the witnesses only when it has

confronted 'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (citation omitted). A court will only impinge upon the jury's duty to judge witness credibility "where a *sole* witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a *complete lack of circumstantial evidence* of the appellant's guilt." *Id*. (emphases in original).

[13] Goodwin's testimony that Scroggins burglarized Martha's home and stole several items, including her jewelry, television, cameras, laptop and pills, is not the only evidence supporting Scroggins's burglary conviction. In the recorded jail house phone call, Scroggins implicated himself in the burglary. He and Goodwin discussed the items Scroggins stole from Martha's residence, whether Goodwin had sold them, and how much money she received for selling the stolen items. Tr. pp. 198-204. Some of Martha's stolen property was also found in the bedroom Scroggins and Goodwin shared.

[14] Scroggins also admitted to his cellmate that he had burglarized the trailer next door to his home. He told his cellmate that he "jimmied the door with a screwdriver to get" in the home. Tr. p. 219; *see also* Tr. pp. 99-100 (the responding officer testified that it appeared that someone had used a screwdriver to price open the back door of Martha's home). Scroggins also told his cellmate that he stole "the lad[y's] TV and some pills," and the cellmate recalled that Scroggins also said "something about a computer." Tr. p. 220.

Because Goodwin's testimony was not the only evidence supporting Scroggins's Level 4 burglary conviction, the incredible dubiosity rule does not apply in this case. Moreover, Scroggins argues that Goodwin's testimony is incredibly dubious because she was caught with Martha's stolen property and implicated Scroggins, who was already in jail for the parole violation. However, this does not meet the standard of the incredible dubiosity rule which requires "inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *See Moore*, 27 N.E.3d at 755. Goodwin consistently testified that Scroggins burglarized Martha's home. It was within the province of the jury to weigh the credibility of her testimony, and we will not reweigh the evidence and the credibility of the witnesses on appeal. *See Duncan v. State*, 23 N.E.3d 805, 812 (Ind. Ct. App. 2014), *trans. denied*.

## Inappropriate Sentence

"The authority granted by Article 7, § 4 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B). Under this rule and as interpreted by case law, appellate courts may revise sentences—after due consideration of the trial court's decision—if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008)).  The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those

charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225.

[17]     Scroggins argues that his maximum, twelve-year sentence[1] is inappropriate in light of the nature of the offense and the character of the offender. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. Scroggins bears the burden of persuading our court that his sentence is inappropriate. *See Rutherford v. State*, 866 N.E.2d, 867, 873 (Ind. Ct. App. 2007).

[18]     Scroggins broke into a sixty-six-year old woman's home. He ransacked the residence and stole numerous items of monetary and sentimental value. Scroggins argues that the nature of his crime is not severe because he burglarized the home while Martha was at work, lessening the risk that his crime would result in physical harm.

[19]     Martha lost years of photos and genealogical documents that were of great personal and sentimental value to her. Since the burglary, she has trouble sleeping at night, and her health has suffered. She also fears Scroggins because he threatened to hurt Martha when he is no longer incarcerated. Tr. p. 221.

---

[1] When sentencing Scroggins for his Level 4 burglary conviction, the trial court was authorized to impose a sentence in a range from two to twelve years, with six years being the advisory sentence. *See* Ind. Code § 35-50-2-5.5.

Scroggins's character also supports his twelve-year sentence. He was on parole when he committed this offense, and he violated his parole by living in the trailer next to Martha's home. He has five prior felony convictions, including attempted burglary, receiving stolen property, nonsupport of a dependent, and dealing in and possession of methamphetamine. He also has three prior misdemeanor convictions. He is grossly delinquent in payment of child support and has never successfully completed probation. Scroggins also lied to the probation officer who prepared the pre-sentence investigation report concerning an alias he has used in the past. As the trial court noted, Scroggins is a "lifetime criminal" who has been unable to change his behavior to become a law abiding citizen. *See* tr. p. 334.

For all of these reasons, we conclude that Scroggins's twelve-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

We conclude that the incredible dubiosity rule is inapplicable to this case and therefore affirm Scroggins's Level 4 burglary conviction. We also affirm his maximum twelve-year sentence, which we conclude is not inappropriate in light of the nature of the offense and the character of the offender.

Vaidik, C.J., and Barnes, J., concur.