## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 17 2017, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronald E. Stewart, *Appellant-Defendant,* | November 17, 2017 |
| v. | Court of Appeals Case No. 78A01-1703-CR-509 |
| | Appeal from the Switzerland Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Gregory Coy, Judge |
| | Trial Court Cause No. 78C01-1504-F4-115 |

**Barnes, Judge.**

## Case Summary

Ronald Stewart appeals his convictions and thirty-two-year sentence for two counts of Level 4 felony child molesting and the finding that he is a repeat sexual offender. We affirm in part, reverse in part, and remand.

## Issues

The issues before us are:

I.  whether there is sufficient evidence to sustain Stewart's convictions;

II.  whether the trial court properly enhanced both of Stewart's sentences for child molesting based on the finding that he is a repeat sexual offender; and

III.  whether Stewart's sentence is inappropriate.

## Facts

Stewart was the boyfriend of Lori Pierce. Pierce often watched two girls, K.P. and K.O., at her one-bedroom apartment in Vevay while K.P.'s mother and K.O.'s father worked. K.P. is Pierce's granddaughter, and K.O. is her step-granddaughter. Stewart frequently was at Pierce's apartment when she would babysit. On April 1, 2015, K.P.'s mother brought her and K.O. to Pierce's apartment as usual, and Stewart was there. On that date, K.P. was eleven years old and K.O. was eight. Pierce also was watching K.P.'s two younger brothers.

[4] Pierce is a paraplegic. While Pierce was watching TV in her living room with K.P.'s brothers, K.P. and K.O. decided to go into the bedroom, where Stewart was on the bed watching TV. After they got on the bed with Stewart, he took turns giving them back rubs. K.P. later recalled that she had asked Stewart for a back rub, as he had given before, while K.O. recalled that Stewart offered them both back rubs and they agreed. While rubbing each girl's back, Stewart also placed his hand inside their underwear and rubbed their buttocks; he also touched K.O.'s vagina through her underwear. K.P. got up and left the room after Stewart touched her and had attempted to lift up her shirt; K.O. stayed in or returned to the bedroom after Stewart stopped touching her, and he did not attempt to touch her again.

[5] Shortly thereafter, K.P.'s mother came to pick the children up. After leaving the apartment, K.P. told her mother about Stewart touching her inappropriately. K.P.'s mother then asked K.O. if Stewart had touched her too, and she said yes. K.P.'s mother immediately reported what she had been told to the police. No police officers spoke with K.P. and K.O. However, a few days later, a forensic interviewer spoke with them at a child advocacy center, and they repeated their allegations against Stewart.

[6] On April 10, 2015, the State charged Stewart with two counts of Level 4 felony child molesting. It later filed an allegation that Stewart was a repeat sexual

offender, based on a 1995 Kentucky conviction for Class C felony sodomy.[1] After a bifurcated jury trial held on January 11, 2017, Stewart was found guilty as charged and found to be a repeat sexual offender. At sentencing, the trial court found as mitigating circumstances Stewart's poor health, the lack of physical harm to the victims, the lack of use of a weapon, and Stewart's diagnosis with depression following his incarceration. As aggravators, the trial court noted Stewart's prior sodomy conviction, a 2007 Kentucky Class D felony conviction for failing to register as a sex offender, Stewart's having a position of care, custody, or control over the victims, the crimes being committed in the presence of other children under eighteen years old, and the victims being under twelve years of age. The trial court imposed sentences of ten years for each offense, enhanced both sentences by six years for the repeat sexual offender finding, and ordered the sentences to be served consecutively for an aggregate term of thirty-two years. Stewart now appeals.

## Analysis

### I. Sufficiency of the Evidence

[7]     Stewart first challenges the sufficiency of the evidence supporting his convictions for Level 4 felony child molesting. When analyzing a claim of insufficient evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Sallee v.*

---

[1] Stewart had pled guilty to this charge, which alleged that he committed deviate sexual intercourse with a child under fourteen years old, and received a ten-year sentence.

*State*, 51 N.E.3d 130, 133 (Ind. 2016). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* The evidence does not have to overcome every reasonable hypothesis of innocence, and it is sufficient if an inference may reasonably be drawn to support the verdict. *Id.*

[8] Stewart specifically claims that K.O.'s and K.P.'s testimony describing their molestation was incredibly dubious. The incredible dubiosity rule allows an appellate court to impinge upon the fact-finder's responsibility to judge witness credibility only in the narrow circumstance where there is inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)). For this rule to apply, there must be: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Id.* at 756.

[9] It is not perfectly clear that the "sole testifying witness" requirement of the incredible dubiosity rule is met here, given that both K.O. and K.P. testified. However, it is true that K.P., at least, provided the sole testimony as to her own molestation, as K.O. testified that she did not witness it. Stewart directs us to certain inconsistencies between the girls's testimony. For instance, although K.P. testified that she was present when Stewart molested K.O., K.O. testified that K.P. was in the bathroom when he did so. Also, K.P. testified that they were lying on their stomachs when Stewart massaged them, while K.O. testified

that they were sitting upright. As noted earlier, K.P. testified that she asked Stewart to give her and K.O. massages, while K.O. testified that Stewart had asked to do so.

[10] We find such discrepancies between K.O.'s and K.P.'s testimony to be relatively minor, and certainly not enough to make their testimony incredibly dubious. It is well-settled that a good deal of leeway is accorded to the testimony of children, with respect to "equivocations, uncertainties, and inconsistencies," and must be considered in conjunction with all the circumstances and recognizing the passage of time between an incident and trial. *Fajardo v. State*, 859 N.E.2d 1201, 1209 (Ind. 2007). Additionally, as a general rule, when there are inconsistencies as to details of an offense between multiple witnesses, it merely goes to the weight a fact-finder may decide to give to various witnesses' testimony; it does not mean their testimony is incredibly dubious. *Moore*, 27 N.E.3d at 759. Here, each child's testimony was consistent with regard to what Stewart specifically did to them and was consistent as to the broad details. Any discrepancies or inconsistencies as to certain details went to the weight of their testimony, not its legal sufficiency.

[11] Stewart also suggests that K.O.'s testimony was incredibly dubious because she testified that she stayed in or returned to the bedroom after Stewart had fondled her. This seems to assume that a molested child in every case will run away from his or her abuser. We think such an assumption is unwarranted and disregards the various reactions a child may have to being abused or victimized.

Finally, Stewart contends that K.O.'s testimony was somehow coerced, because K.P.'s mother asked K.O. whether she had been touched after K.P. had told her mother she had been touched. If we were to accept Stewart's argument, it would mean that no parent (or guardian) could ever ask a child whom they suspected of being abused whether such abuse did occur. This would likely improperly exclude the testimony of children in a vast number of cases. There is no evidence in the record that K.P.'s mother or anyone else engaged in any "coaching" of K.O. or that it was coerced. *See Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (holding that seven-year-old child's testimony that mother had "told her what to say" did not make her testimony incredibly dubious, where child also testified that mother had told her to "tell the truth"), *trans. denied*. In sum, K.O.'s and K.P.'s testimony does not fall under the incredible dubiosity rule and there is sufficient evidence to sustain Stewart's convictions.

## II. Repeat Sexual Offender Enhancement

Next, Stewart contends the trial court improperly enhanced both of his sentences for Level 4 felony child molesting based on the finding that he is a repeat sexual offender. The State concedes that only one of Stewart's sentences could be enhanced.

The repeat sexual offender statute provides:

> (a) As used in this section, "sex offense" means a felony conviction:

(1) under IC 35-42-4-1 through IC 35-42-4-9 or under IC 35-46-1-3;

(2) for an attempt or conspiracy to commit an offense described in subdivision (1); or

(3) for an offense under the laws of another jurisdiction, including a military court, that is substantially similar to an offense described in subdivision (1).

(b) The state may seek to have a person sentenced as a repeat sexual offender for a sex offense described in subsection (a)(1) or (a)(2) by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated one (1) prior unrelated felony conviction for a sex offense described in subsection (a).

(c) After a person has been convicted and sentenced for a felony described in subsection (a)(1) or (a)(2) after having been sentenced for a prior unrelated sex offense described in subsection (a), the person has accumulated one (1) prior unrelated felony sex offense conviction. However, a conviction does not count for purposes of this subsection, if:

(1) it has been set aside; or

(2) it is a conviction for which the person has been pardoned.

(d) If the person was convicted of the sex offense in a jury trial, the jury shall reconvene to hear evidence in the enhancement hearing. If the trial was to the court, or the judgment was entered on a guilty plea, the court alone shall hear evidence in the enhancement hearing.

(e) A person is a repeat sexual offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated one (1) prior unrelated felony sex offense conviction.

(f) The court may sentence a person found to be a repeat sexual offender to an additional fixed term that is the advisory sentence for the underlying offense. However, the additional sentence may not exceed ten (10) years.

Ind. Code § 35-50-2-14.

[15] Our supreme court has noted three types of enhanced sentencing schemes for recidivist offenders: the general habitual offender statute, specialized habitual offender statutes, and progressive-penalty statutes. *Dye v. State*, 972 N.E.2d 853, 857 (Ind. 2012). The repeat sexual offender statute is a specialized habitual offender statute. *Id.* Generally, "double enhancements" of a defendant's sentence are prohibited unless there is explicit legislative direction authorizing them. *Id.* at 856. It is settled Indiana law that "a trial court cannot order consecutive habitual offender sentences," regardless of whether the sentences are imposed in the same or different proceedings. *Breaston v. State*, 907 N.E.2d 992, 994-95 (Ind. 2010) (citing *Starks v. State*, 523 N.E.2d 735, 737 (Ind. 1988)). "[T]he prevailing point in *Starks* and the line of cases that follow is that absent express statutory authority to do so, trial courts cannot impose consecutive enhanced sentences, regardless of the circumstances under which they arise." *Venters v. State*, 8 N.E.3d 708, 712 (Ind. Ct. App. 2014) (applying *Starks* to invalidate enhancement of two consecutive sentences under

specialized habitual substance offender statute). When a trial court improperly imposes consecutive sentences with habitual offender enhancements, the proper remedy is to order all but one of the habitual offender enhancements vacated. *See Weaver v. State*, 676 N.E.2d 22, 27 (Ind. Ct. App. 1997), *trans. denied*.

[16] The State agrees that the repeat sexual offender enhancement of both of Stewart's consecutive sentences violated the *Starks* line of cases. Thus, we order that one of those enhancements be vacated. This will result in a new aggregate sentence for Stewart of twenty-six years.

### III. Inappropriate Sentence

[17] The final issue before us is whether Stewart's sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offenses. We will consider whether a term of twenty-six years is inappropriate, given our vacation of one of the repeat sexual offender enhancements. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[18] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived

'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[19] Regarding the nature of the offenses, Stewart notes that there was no violence or physical harm to the children and no evidence that they sustained psychological trauma beyond what would have already been considered in setting the advisory sentence for Level 4 felony child molesting. However, Stewart took advantage of a situation in which his paralyzed girlfriend frequently babysat the girls, and touched both of them inappropriately during backrubs after he had made them comfortable with receiving backrubs from him on previous occasions. K.S.'s younger brothers were in the next room when the molestations occurred.[2] Additionally, we note that "[c]onsecutive

---

[2] Although Stewart frames his sentencing argument as an inappropriateness argument, he contends the trial court abused its discretion in finding as aggravating circumstances that he had a position of care, custody, or control over the girls and that he committed the crimes in the presence of other children. However, he fails

sentences reflect the significance of multiple victims." *Pittman v. State*, 885 N.E.2d 1246, 1259 (Ind. 2008).

[20] As for Stewart's character, his prior conviction for a similar sex offense and his failure to properly register as a sex offender after being released from prison for that offense are troubling, given their close relation to the present offenses. Stewart contends that it is unlikely he would reoffend, given his age (sixty-four at the time of sentencing) and his poor health. As the State notes, however, Stewart committed these offenses when his health already was poor and his age was advanced. It is reasonable to think he could commit similar offenses in the future, regardless of his age and health. We cannot say that the nature of the offenses here and Stewart's character necessarily dictate that his sentence of twenty-six years is inappropriate.

## Conclusion

[21] There is sufficient evidence to sustain Stewart's convictions for two counts of Level 4 felony child molesting. We reverse and remand in part with directions that one of Stewart's six-year sentencing enhancements for being a repeat sexual offender be vacated, reducing his total sentence to twenty-six years. That remaining twenty-six-year sentence is not inappropriate.

---

to cite relevant authority and make a cogent argument regarding an abuse of discretion standard of review, which is separate and distinct from inappropriateness review. *See Keller v. State*, 987 N.E.2d 1099, 1121 n.11 (Ind. Ct. App. 2013), *trans. denied*. Stewart has waived review of this argument. *See id.*

Affirmed in part, reversed in part, and remanded.

May, J., and Bradford, J., concur.