## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2018, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul E. Reese Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 13, 2018 <br><br> Court of Appeals Case No. 18A-CR-37 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Helen Marchal, Judge <br><br> Trial Court Cause No. 49G15-1704-F6-13121 |

**Barnes, Judge.**

# Case Summary

Paul E. Reese, Jr., appeals his one and one-half year sentence for Level 6 felony resisting law enforcement by fleeing in a vehicle. We affirm.

# Issue

The sole issue before us is whether Reese's sentence is inappropriate in light of the nature of his offense and his character.

# Facts

On April 9, 2017, at approximately 6:40 P.M., Indianapolis Metropolitan Police Department ("IMPD") Officer Corey Mims was on duty patrolling the 3800 block of Fletcher Avenue in Indianapolis. He was in full uniform, wearing his police badge, and driving his IMPD squad car—equipped with a siren, red and blue lights, and IMPD insignia. He was dispatched to respond to a complaint regarding activities at the house located at 3835 Spann Avenue ("the house"), where Reese resided. The caller complained of multiple people on ATVs and dirt bikes "rolling up and down the street, running stop signs where there were kids visibly playing." Tr. Vol. II p. 24; App. Vol. II p. 16. Officer Mims later testified that

> you can ride a dirt bike [or ATV] but it has to be plated and it has
> to have proper headlights, taillights, turn signals and things like
> that on it. If [it doesn't, it is] in violation [and one] can't operate
> [it] on the roadway.

Tr. Vol. II p. 26.

[4] When he arrived at the scene, Officer Mims did not observe any ATVs or dirt bikes in the street. In the alley immediately behind the house, Officer Mims encountered Reese, who was wearing a black long-sleeved shirt and blue jeans. The garage of the house was open, and Officer Mims observed ATVs "and things like that inside the garage." *Id*. at 27. A second man was with Reese and wore a red sweatshirt and jeans. Officer Mims exited his squad car and "advised Reese of the complaint . . . ." *Id*.

[5] At approximately 8:00 P.M., Officer Mims received a second dispatch regarding the house—again complaining of "ATV's racing up and down the roadway, running stop signs . . . so that [the callers] were concerned about the kids' welfare that were playing outside in the yards." *Id*. at 29. Officer Mims drove back to the house and, on hearing ATV and dirt bike engines, "started going eastbound on Spann to[ward] the sound. . . ." *Id*. at 30. He traveled east on Spann, south on Denny, and east on Fletcher Avenue, where he saw at least five westbound dirt bikes and ATVs approaching him.

[6] Officer Mims activated his siren and emergency lights to initiate a stop. He later testified that he intended to "get out and talk to them and tell them [that] they can't drive ATV's and dirt bikes in the middle of the roadway and advise them of several complaints . . . ." *Id*. at 32. Several of the ATV and dirt bike riders "fled westbound." *Id*. Officer Mims, who was already eastbound, focused on two eastbound vehicles. As he later testified,

> . . . [There was] a dark colored ATV . . . along with a red and white dirt bike. I s[aw] Mr. Reese on the four-wheeler. The

reason I knew it was Mr. Reese [was] because I had just talked to him an hour and some change previously. And I [had] advised him of the complaint. As he is coming towards me on the four-wheeler and he turns around and goes back eastbound on Fletcher . . . I then beg[a]n to pursue the four-wheeler and the red and white dirt bike.

*Id.* at 32. Reese was still wearing a black long-sleeved shirt and jeans, had tied a gray bandanna over his face, and was driving a dark colored ATV. The second man, riding a red and white dirt bike, wore a red sweatshirt and jeans. Neither driver heeded Officer Mims' lights; instead, they tried to evade him. Officer Mims' pursuit of the drivers spanned several streets, and he eventually lost sight of them.

[7]     Because he had recognized Reese, Officer Mims returned to the house and observed Reese and another man—wearing a red sweatshirt—walking in the alley. Officer Mims exited his car, approached the men, and "told both of them to get down on the ground at gunpoint." *Id.* at 38. Both men "were panting and heav[il]y out of breath" and "covered in dirt." *Id.* at 57. Although both men initially complied, the second man "fled through the alley back eastbound." *Id.* Officer Mims handcuffed and arrested Reese for fleeing from a law enforcement officer while using a vehicle; he also read him his *Miranda* advisements. When Officer Mims asked Reese why he had fled, Reese denied owning an ATV or being the person that Officer Mims had observed operating an ATV on a public street. A search incident to arrest revealed a dark-colored bandanna in Reese's pocket.

[8]     On April 10, 2017, the State charged Reese with Level 6 felony resisting law enforcement by fleeing by vehicle. He was tried by a jury on November 29, 2017. The jury found Reese guilty as charged. At his sentencing hearing on December 13, 2017, the trial court imposed a sentence of one and one-half years (545 days) of confinement on community corrections. The trial court found Reese's criminal history to be an aggravating circumstance and found no mitigating circumstances. Reese now appeals.

## Analysis

[9]     Reese contends that his sentence is inappropriate in light of the nature of his offense and his character. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006).

[10]    The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged

with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State,* 926 N.E.2d 1023, 1025 (Ind. 2010).

[11]     The advisory sentence for a Level 6 felony is one year, with a sentencing range of six months and two and one-half years. Ind. Code § 35-50-2-7(b). Here, citing Reese's criminal history, the trial court imposed an enhanced one and one-half year commitment to community corrections, with no suspended time or probation.

[12]     As to the nature of the offense, despite a string of prior warnings and within two hours of receiving yet another warning from Officer Mims, Reese and others improperly operated non-street-legal dirt bikes and/or ATVs in public roadways and disregarded traffic signals in the vicinity of playing neighborhood children. Two hours after Officer Mims warned him against such behavior, Reese and others again took to the streets. When Officer Mims sought to apprehend Reese, Reese disregarded his siren and flashing emergency lights, led him on a chase through city streets, and briefly evaded him.

Regarding his character, then-twenty-nine-year-old Reese's prior criminal history includes true findings as a juvenile for conversion, criminal mischief, and possession of marijuana, as Class A misdemeanors. "As an adult he has been arrested or summonsed on 16 [sixteen] known occasions." App. Vol. II p. 116. His adult criminal history includes two Level 6 felony convictions for criminal recklessness and domestic battery; and three Class A misdemeanor convictions for possession of hash oil, invasion of privacy, and resisting law enforcement. In light of his criminal history and, in the instant case, his relentless flouting of law enforcement authority, despite numerous warnings that his conduct was not only illegal but also endangering neighborhood children, we cannot say that Reese's one and one-half year executed sentence is inappropriate in light of the nature of the offense and his character.

## Conclusion

Reese's sentence is not inappropriate in light of the nature of his offense and his character. We affirm.

Affirmed.

Vaidik, C.J., and Pyle, J., concur.