

**FILED**

Aug 18 2023, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Erica S. Sullivan
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Vincent S. Horns,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 18, 2023

Court of Appeals Case No.
22A-CR-2813

Appeal from the Hendricks Circuit
Court

The Honorable Daniel F. Zielinski,
Judge

Trial Court Cause No.
32C01-2105-F3-9

**Opinion by Judge Pyle**

Judges Vaidik and Mathias concur.

**Pyle, Judge.**

## Statement of the Case

A jury convicted Vincent Horns ("Horns") of Level 6 felony leaving the scene of an accident[1] and Level 6 felony obstruction of justice,[2] and the trial court imposed an aggregate sentence of four years for the two convictions. Horns appeals the Level 6 felony obstruction of justice conviction as well as the aggregate sentence imposed. He argues that the evidence is insufficient to support the Level 6 felony obstruction of justice conviction and that the four-year aggregate sentence is inappropriate. Concluding that the evidence is sufficient to support Horns' conviction and that the aggregate sentence is not inappropriate, we affirm the trial court's judgment.

We affirm.

## Issues

1. Whether there is sufficient evidence to support Horns' conviction for Level 6 felony obstruction of justice.

2. Whether Horns' aggregate sentence is inappropriate.

## Facts

The facts most favorable to the verdict reveal that on April 5, 2021, sixty-two-year-old George Walsh ("Walsh") was riding his motorcycle eastbound on US 40 when fifty-seven-year-old Horns, who was driving a pick-up truck, made a

---

[1] IND. CODE § 9-26-1-1.1(b)(2).

[2] IND. CODE § 35-44.1-2-2.

left turn from the oncoming westbound lane and "t-boned" Walsh's motorcycle. (Tr. Vol. 2 at 183). The impact of the crash sent Walsh "tumbling" onto a grassy area at the side of the road. (Tr. Vol. 2 at 183). Horns approached Walsh and asked him if he was okay. Walsh, whose leg had been completely severed, told Horns that he was not okay and asked Horns to call 911. Horns, however, left the scene with Walsh's leg and foot wedged in the front of his truck and drove to his job at a nearby warehouse.

[4] Witnesses to the accident stopped, called 911, and assisted Walsh. When Paramedic Cole Zeunik ("Paramedic Zeunik") arrived at the scene, he noticed that Walsh's leg from the "mid-calf down was missing. And what was remaining looked like it had gone through a meat grinder[.]" (Tr. Vol. 2 at 80). Paramedic Zeunik looked for Walsh's lower leg and foot in the surrounding grassy area; however, witnesses told him "that it was gone and it was in the truck" that had hit Walsh. (Tr. Vol. 2 at 82).

[5] One of the witnesses had written down the license plate number of Horns' truck, and Plainfield Police Department officers began looking for the truck. Plainfield Police Department Officer Ryan Salisbury ("Officer Salisbury") subsequently located the truck in a nearby warehouse parking lot. Officer Salisbury noticed blood and human flesh on the front of the truck.

[6] Plainfield Police Department Detective Corporal Brian Stewart ("Detective Stewart") arrived at the warehouse parking lot to assist Officer Salisbury and noticed a lidded trash can that was located next to an employee entrance to the

warehouse. When Detective Stewart lifted the lid off the trash can, he discovered Walsh's severed leg and foot in the trash can. The foot was still in the black boot that Walsh had been wearing at the time of the accident. Detective Stewart had looked in the trash can because, in his experience as a law enforcement officer, subjects who have left the scene have put evidence in trash cans. According to Detective Stewart, subjects do not think that law enforcement officers will look in trash cans "because it is just trash." (Tr. Vol. 2 at 176). Detective Stewart further explained that subjects place evidence in trash cans in an attempt to distance themselves from the evidence.

[7] A Plainfield Police Department officer escorted Horns from the warehouse to the police station. Plainfield Police Department Officer Nicholas Wennen ("Officer Wennen") interviewed Horns, who initially denied being involved in the accident with Walsh. Horns subsequently acknowledged that he had been involved in the accident, had left the scene, and had gone to work. When Officer Wennen asked Horns why he had placed Walsh's limb in the trash can, Horns "alluded to the fact that he was trying to conceal the crime." (Tr. Vol. 2 at 142).

[8] The State charged Horns with Level 4 felony leaving the scene of an accident and Level 6 felony obstruction of justice. In addition, the State charged Horns with other offenses that it later dismissed.

[9] The jury heard the evidence as set forth above at Horns' two-day jury trial in August 2022. The jury convicted Horns of Level 6 felony obstruction of justice

and Level 6 felony leaving the scene of an accident, a lesser-included offense of Level 4 felony leaving the scene of an accident. At Horns' sentencing hearing, the trial court reviewed Horns' presentence investigation report, which revealed that Horns has a forty-year criminal history that includes twenty-one arrests, resulting in nine felony and two misdemeanor convictions. Specifically, Horns has four felony convictions for theft, two felony convictions for robbery, one felony conviction for possession of cocaine, one felony conviction for possession of marijuana or hash, and one felony conviction for battery. In addition, Horns has misdemeanor convictions for driving while suspended and criminal trespass. Horns also has a history of violating community corrections and parole.

[10] Thereafter, the trial court found Horns' criminal history and past criminal behavior, which includes the twenty-one arrests that resulted in nine felony and two misdemeanor convictions, to be aggravating factors. In addition, the trial court found Horns' remorse to be a mitigating factor. Thereafter, the trial court sentenced Horns to two years for each of the two Level 6 felony convictions. The trial court further ordered the sentences to run consecutively to each other for an aggregate executed sentence of four years in the Indiana Department of Correction.

[11] Horns now appeals his conviction for Level 6 felony obstruction of justice and his aggregate four-year sentence.

## Decision

[12] Horns argues that there is insufficient evidence to support his Level 6 felony obstruction of justice conviction and that his four-year aggregate sentence is inappropriate. We address each of his contentions in turn.

### 1. Sufficiency of the Evidence

[13] Horns first argues that there is insufficient evidence to support his Level 6 felony obstruction of justice conviction. We disagree.

[14] Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[15] In order to convict Horns of Level 6 felony obstruction of justice, the State was required to prove that he altered, damaged, or removed any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation. *See* I.C. 35-44.1-2-2(a)(3). Horns specifically argues that "[t]here is . . . no evidence that [he] intended to prevent the use of the severed foot in a criminal investigation when he placed the foot in the garbage." (Horn's Br. 5-6). Intent is a mental state, and absent the defendant's admission, "the jury must resort to the reasonable inferences from

both the direct and circumstantial evidence to determine whether the defendant ha[d] the requisite . . . intent to commit the offense in question." *Pritcher v. State*, 208 N.E.3d 656, 665-66 (Ind. Ct. App. 2023) (cleaned up).

[16] Here, our review of the evidence reveals that Horns, who had just been involved in an accident that had severed Walsh's lower leg, left the scene with Walsh's severed leg attached to the front of his truck and drove to work as if no accident had occurred. When Horns arrived at work, he removed Walsh's severed limb from the front of his truck, took the lid off a trash can that was located near the employee's entrance to the warehouse, placed Walsh's severed limb in the trash can, and then placed the lid back on the trash can, covering Walsh's limb. Detective Stewart testified that in his experience as a law enforcement officer, subjects who have left the scene have disposed of evidence in trash cans. According to Detective Stewart, subjects do not think law enforcement officers will look in trash cans because it is just trash. Detective Stewart further explained that placing evidence in a trash can serves to distance the subject from the evidence. We further note that Detective Wennen testified that when he asked Horns why he had placed Walsh's limb in the trash can, Horns alluded to the fact that he was trying to conceal the crime. Based on this evidence, the jury could have reasonably inferred that Horns placed Walsh's limb in the trash can with the intent to prevent the limb from being produced or used as evidence against him. Horns' argument is essentially an invitation to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

There is sufficient evidence to support Horns' conviction for Level 6 felony obstruction of justice.

## 2. Inappropriate Sentence

[17] Horns also argues that his four-year aggregate sentence, which includes a two-year sentence for Level 6 felony leaving the scene of an accident and a two-year sentence for Level 6 felony obstruction of justice, is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[18] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Horns was convicted of two Level 6 felonies. The sentencing range for a Level 6 felony is between six (6) months and two and one-half (2½) years, and the advisory sentence is one (1) year. IND. CODE § 35-50-2-7(b). Here, the trial court imposed a two-year sentence for each of the two Level 6 felonies and

ordered the two sentences to run consecutively to each other for an aggregate sentence of four years.

[19]     With regard to the nature of the offenses, we note that after being involved in an accident that severed Walsh's leg, Horn failed to remain at the scene, call 911, or render aid to Walsh. Rather, in an extraordinary display of cold-hearted selfishness, Horn left the scene of the accident with Walsh's leg and foot attached to the front of Horn's truck and went to work as if no accident had occurred. When Horn arrived at work, he placed Walsh's limb in a lidded trashcan so that the limb was hidden from view.

[20]     With regard to Horns' character, we note that Horns has an extensive criminal history that spans forty years and includes twenty-one arrests, resulting in nine felony and two misdemeanor convictions. Horns' criminal history reflects poorly on his character for the purposes of sentencing. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007).

[21]     Based on the nature of the offenses and his character, Horns has failed to persuade this Court that his aggregate four-year executed sentence is inappropriate.

[22]     Affirmed.

Vaidik, J., and Mathias, J., concur.